IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 19-cr-00224-PAB

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DAKOTA MICHAEL HELLER,

        Defendant.
_____

**MOTION TO EXCLUDE EXPERT TESTIMONY AND FOR *DAUBERT* HEARING**
_____

Dakota Michael Heller, through counsel, moves to exclude the testimony of Karen Blackwell pursuant to Fed. R. Crim. P. 16(a)(1)(G), or alternatively, for a *Daubert* hearing and exclusion based on Fed. R. Evid. 702 and 403.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

The government has disclosed its intent to offer the expert testimony of Karen Blackwell and provided a written summary of the potential witness's testimony. According to the disclosure, Ms. Blackwell has specialized knowledge in two areas related to child sex abuse, (1) the process of victimization (i.e., "grooming"); and (2) the process of disclosure (i.e., delayed disclosure), and she may testify generally about these issues.  However, because the written summary fails to provide the bases of the witness's opinions, it is insufficient to meet the government's obligations under Rule 16(a)(1)(G), and this Court should exclude the testimony.  Moreover, because the proposed testimony is neither reliable nor relevant, this Court should grant a *Daubert* hearing and exclude the testimony pursuant to Rules 702 and 403.

**I.     The government's Rule 16 disclosure is insufficient.**

Federal Rule of Criminal Procedure 16 requires disclosure of a written summary of proposed expert testimony.  "This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."  Fed R. Crim. P. 16(a) (1) (G).  This amendment was added to the Rule to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony.  Fed.R.Crim.P. 16, 1993 Advisory Comm.'s Notes.  The Advisory Committee noted the increased use of scientific expert testimony and counsel's basic need to know what testimony to expect, and acknowledged that disclosure of such information "is particularly important if the expert is expected to testify on matters which touch on new or controversial techniques or opinions."  *Id.*

The Advisory Committee explained that the amendment is intended to meet this need by: (1) requiring notice of the expert's qualifications which will permit the requesting party to determine whether the witness is an expert within the definition of FRE 702; (2) entitling the requesting party to a summary of the expected testimony to permit more complete pretrial preparation; and (3) "perhaps most important," providing the requesting party a summary of the bases of the expert's opinion that should cover "not only written and oral reports, tests, reports, and investigations, but any information that might be recognized as a legitimate basis for an opinion under FRE 703 including opinions of other experts."  *Id.*

Here, the government's notice provides a summary of the "witness's opinions," as well as the "witness's qualifications" in the form of a curriculum vitae; however, the

2

witness's conclusions are not supported by any explanation of the "bases and reasons for those opinions." Fed. R. Crim. P. 16(a)(1)(G).  The only explanation is that Ms. Blackwell has "gained this specialized knowledge through her education, studies, review of the literature, training which includes hand-on forensic interview training, and the thousands of forensic interviews that she has personally conducted."  [Attachment A]. While of course the government cannot be expected to produce the reports of the "thousands of forensic interviews that she has personally conducted," the government can produce, and should have produced, at least some of the studies and literature on which she based her opinions.  Instead, Mr. Heller has been given no "information that might be recognized as a legitimate basis for an opinion under FRE 703 including opinions of other experts."  *Id.*  Without this information, Mr. Heller does not have a "fair opportunity to test the merit of the expert's testimony" in either a *Daubert* hearing or at trial.  Particularly since the government's disclosure was untimely, the government's additional failure to meet the substantive requirements of the rule should result in exclusion of the witness's testimony.

Mr. Heller also has reason to believe that the summary of the witness's opinions is incomplete, and Mr. Heller moves to exclude any potential opinions of the witness not contained in the written summary.  Specifically, while the disclosure states that the expert may testify regarding two specific areas, grooming and delayed disclosure, the government's motion to permit late disclosure suggested *three* topics on which the witness would testify: "(1) delayed outcry by victims of child sex abuse and similar conduct; (2) grooming; and (3) *the workings/development of the adolescent male brain*." Gov't's Motion Order Permitting Filing Expert Notice Disclosure 2, n. 2 (emphasis

3

added). The government's disclosure provided no notice about this third topic, no opinions related to this topic, nor bases for those opinions. Accordingly, any opinions about the workings/development of the adolescent male brain must be excluded.

Additionally, at the very end of the summary of opinions, the government states that "Ms. Blackwell's testimony and opinions are based" in part on "her review of memoranda of interviews and other investigative materials in this case." [Attachment A, p.3]. However, none of the opinions summarized are directly about the facts of this case – they are about grooming and delayed disclosure in general. Thus, to the extent that the witness might seek to testify about the application of her general opinions to the specific facts of this case, those opinions have not been properly disclosed pursuant to Rule 16 and should be excluded.

## II.     The proposed expert testimony does not meet the requirements of Rule 702, and Mr. Heller is entitled to a *Daubert* hearing.

A witness may testify in the form of an opinion if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 requires the court to determine whether the witness's testimony is reliable and relevant prior to its admission. *See Daubert*, 509 U.S. at 589 n.7 and 590-91; *see also United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006). As the proponent of the witness, the government bears the burden to establish the qualification, reliability, and helpfulness of the witness's opinions. *Nacchio*, 555 F.3d

4

at 1241.

"'[W]here [expert] testimony's factual basis, data, principles, methods or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (quoting *Daubert*, 509 U.S. at 592).  This "gate-keeping" requirement should ensure that an expert, whether basing his testimony on professional studies or personal experience, employs the same level of intellectual rigor as an expert practicing in that field.  *Kuhmo Tire*, 526 U.S. at 137.  *Daubert* sets forth several factors that bear on the reliability prong of analysis: (1) whether the experts' theories or techniques can be or have been tested; (2) whether the experts' theories or the theories he relies on have been subjected to peer review and publication; (3) whether the "particular scientific techniques" employed by the experts have known or potential rates of error; and (4) whether the experts' theories or techniques or those they have relied on have been generally accepted within the "relevant scientific community." *Daubert*, 509 U.S. at 593-594.

### A. The witness's proposed testimony is not relevant or helpful to the jury.

First, the witness's opinion on "grooming" is irrelevant because there is no evidence that grooming occurred here.  Thus, the testimony is irrelevant and would not be helpful to the trier of fact.

According to the summary of opinions, "grooming" is defined as a six-step process: (1) identifying a potential target; (2) establishing a connection; (3) gathering more information; (4) filling needs and exploiting vulnerabilities; (5) lowering inhibitions;

5

and (6) preserving the process.  Here, based on the evidence provided in discovery, there is no indication that any of the first five stages of "grooming" occurred.  Rather, the evidence suggests that Mr. Heller and Minor #1, while acquaintances, were not particularly close until the trip to Uganda when the sexual contact occurred.  Only after the incident did they begin seeing each other regularly.  Thus, while there is no allegation that any further inappropriate sexual contact occurred, there is at least arguably some evidence of "preserving the process."  But, unless the government makes a preliminary showing that the six stages of grooming actually occurred, this testimony is wholly irrelevant and unhelpful to the jury. Additional discovery tendered today, pursuant to the subpoena this Court issued, indicates Minor #1 initiated much of the contact after the alleged incident, possibly even negating the sixth step.

The proposed "delayed disclosure" opinion is also unhelpful to the jury and should be excluded.  The opinion summary states, "Child sexual abuse victims may often delay their disclosures, and/or give partial disclosures.  These occurrences can be due to any number of factors.  Failure to disclose and/or partial disclosure may be a coping mechanism for the child."  [Attachment B, p. 2].  While not untrue, this opinion testimony is unhelpful because delayed disclosure is something that is common knowledge and well understood by the jury.  As one journal article has noted, "some evidence suggests that knowledge about delay of disclosure is within the ken of the jury, perhaps therefore obviating the need for expert evidence on the issue of delay." Kamala London et al., *Disclosure of Child Sexual Abuse*, 11 Pyschol., Pub. Pol'y & Law 194, 220 (2005).  It cited a study that "surveyed a sample of adults from the general public and a sample of jurors regarding whether they agreed that delayed disclosure

6

was common among abused children ranging from 1 (*strongly agree that delay is common*) to 6 (*strongly disagree*). They found that the general public had a mean rating of 2.3, and jurors had a mean rating of 1.7, suggesting that laypeople tend to believe that delayed disclosure is common." *Id.* Because the general public already believes that delayed disclosure is common, an expert testifying about delayed disclosure is unhelpful. Minor #1 can testify himself why his disclosure was delayed and the jury can judge his credibility without need for an expert. Perhaps if his explanation were nonsensical and contrary to public understanding yet supported by empirical data, an expert could be helpful to educate the jury. But that does not appear to be the case here. Accordingly, the witness's testimony regarding delayed disclosure is unhelpful and inadmissible under Rule 702.

Finally, to the extent that the witness's proposed testimony explains "grooming" and "delayed disclosure" habits in the context of young children or girls (or any other characteristics not applicable to Minor #1 or Mr. Heller), the testimony is irrelevant. Much of the opinion summary states that it often depends on "any number factors, including the child's age, gender, culture, and emotional factors." To the extent that the expert witness opines on the disclosure habits of, for example, prepubescent girls, that testimony would be unhelpful, irrelevant, and inadmissible.

**B.    The witness's testimony about "grooming" is not reliable.**

Not only is there no evidence of "grooming" in this case, there is no consensus in the relevant field as to a definition of "grooming" nor reliable principles to assess whether grooming has occurred. Accordingly, the witness's opinion testimony concerning "grooming" is unreliable and inadmissible.

In order to be admissible, expert opinion testimony must be "based on sufficient facts or data" and "the produce of reliable principles and methods." Fed. R. Evid. 702(b), (c).  As a recent survey of the relevant literature has concluded, "grooming" fails these standards:

> Currently there is no consensus regarding how to define grooming. In addition, there is no valid method to assess whether grooming has occurred or is occurring. The field possesses an insufficient amount of knowledge about key issues such as the interrater reliability of these judgments or the error rates of these judgments including the frequency of false negatives or false positives. Thus currently it appears that grooming is not a construct that ought to be used in forensic settings as ***it does not meet some of the criteria in the* Daubert *standard***. . . . Right now it does not appear to be the case that there are "reliable principles and methods" to define and detect grooming.

Natalie Bennett & William O'Donohue, *The Construct of Grooming in Child Sexual Abuse*, 23 J. Child Sexual Abuse 957, 974 (2015). [Attachment C, p. 974.]

Accordingly, the witness's testimony on grooming must be excluded.

### III.     The Prejudicial Effect of Karen Blackwell's Testimony Would Substantially Outweigh any Probative Value.

Even if evidence satisfies Rule 702, "it must still survive the rigors of Rule 403" which permits the exclusion of evidence where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury…"  *United States v. Call*, 129 F.3d 1402 (10th Cir. 1997). The Court must conduct a balancing test to determine the probative value of the testimony against its prejudicial effect.  *See*, *United States v. Darren Howell*, 285 F.3d 1263, 1269 (10th Cir. 2002).

The balancing test in this case favors exclusion of evidence because it will unfairly prejudice the defense and mislead the jury into evaluating the merits of the case based on the age of Minor #1, instead of the issue of consent. Mr. Heller is charged with

8

abusive sexual contact with *another person*. The age of that person is not an element of the offense. While the age of the victim may be relevant to explain certain aspects of the case, this is not a child sex case. Congress has determined that a 16-year-old can consent to engaging in a sex act. *See*, 18 U.S.C. §2243(a)(1). Minor #1 was 16-years-old, two months shy of his 17th birthday at the time of the alleged incident. Allowing the expert to testify will shift the focus to the age of Minor #1 and away from the element that is in dispute, whether Mr. Heller believed he had permission.

The defense will already need to overcome jurors' perceived notions of the law regarding the age of consent and statutory rape. Calling an expert witness to testify generally about child and adolescent sex abuse, screams that the age difference is inappropriate or illegal. When balancing the unfair prejudice, confusion of the issues, and misleading the jury with the questionable probative value (as explained in this motion), the Court should exclude the expert testimony under Rule 403.

**CONCLUSION**

This Court should exclude the proposed testimony for failure to comply with Fed. R. Crim. P. 16 or, alternatively, grant a *Daubert* hearing and exclude the testimony pursuant to Rule Fed. R. Evid. 702.

If the Court does permit any of the witness's testimony, it should be limited to the government's case in rebuttal, or alternatively, only after Minor #1 has testified. To the extent that any of the witness's testimony is relevant, it would depend heavily on Minor #1's testimony (for example, if his explanation for delayed disclosure was contrary to common knowledge, then perhaps some expert explanation might be necessary), and Mr. Heller's defense. Allowing the expert to testify in the government's case-in-chief

would potentially deprive Mr. Heller of the opportunity to make appropriate objections and result in prejudice.

If the Court finds the expert witness satisfies the requirements of Rule 702, it should be excluded under Rule 403 because the prejudicial effect would substantially outweigh any probative value.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


s/Kelly Christl
KELLY CHRISTL
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
kelly.christl@fd.org
Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Patricia Davies, AUSA
Email: Patricia.Davies@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Dakota Michael Heller                    (via Mail)


s/Kelly Christl
KELLY CHRISTL
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
kelly.christl@fd.org
Attorney for Defendant