

**U.S. DEPARTMENT OF JUSTICE**

**JASON R. DUNN**
*United States Attorney*
*District of Colorado*

*1801 California Street, Suite 1600    (303) 454-0100*
*Denver, Colorado 80202        FAX (303) 454-0400*

September 13, 2019                                              *Via Electronic Mail*

Kelly D. Christl, Esq.
Natalie Stricklin, Esq.
Federal Public Defender's Office-Denver
633 17th Street, Suite 1000
Denver, CO 80202

      Re:    <u>United States v. Dakota Michael Heller</u>
               Case No. 19-cr-00224-PAB

Dear Counsel:

      Pursuant to the Federal Rules of Criminal Procedure, Rule 16(a)(1)(G) and Rules 702, 703, and 705 of the Federal Rules of Evidence, we provide this written summary of the anticipated testimony of Karen Blackwell and Ken O'Donnell, who are experts or witnesses with specialized knowledge in the respective areas outlined below. Copies of *curriculum vitae* for each witness are included with this letter.

**<u>Karen Blackwell, MSW, LCSW</u>**

      FBI Child and Adolescent Forensic Interviewer Karen Blackwell has specialized knowledge regarding two areas of expertise relevant to child sexual abuse cases: 1) the process of victimization, and 2) the process of disclosure. She has gained this specialized knowledge through her education, studies, review of the literature, training which includes hands-on forensic interview training, and the thousands of forensic interviews that she has personally conducted. Ms. Blackwell's training also includes, but is not limited to, training regarding memory, linguistics, and child development.

      Ms. Blackwell's testimony may include the following areas relevant to this case:

      1) Child sexual abuse victims often have a difficult time reporting details of the sexual abuse. This is true with respect to adults and is even more true with respect to children. The difficulty in the disclosure process can be affected by any number of factors, including the child's age, gender, culture, and emotional factors, such as shame and fear.



DEFENDANT'S EXHIBIT
Attachment A
US v. Heller
19-cr-00224-PAB

2) Child sexual abuse victims may often delay their disclosures, and/or give partial disclosures. These occurrences can be due to any number of factors.  Failure to disclose and/or partial disclosure may be a coping mechanism for the child.

3) Child sexual abuse victims may delay disclosure based upon their concern regarding the possible effect of the disclosure, including fear of what might happen to themselves or the offender as a result of disclosing.  Longer delays in disclosure are commonly associated with two factors: the relationship between the victim and the perpetrator, and the degree to which the child feels responsible for the abuse.

4) The process of grooming a child for sexual purposes includes six different components.  The Behavioral Analysis Unit of the FBI defines grooming as a "dynamic process utilizing a constellation of behaviors aimed at gaining the cooperation of the child to achieve sexual gratification for the offender and/or others."  The process of grooming a child includes identifying a potential target, establishing a connection, gathering more information, filling needs and exploiting vulnerabilities, lowering inhibitions and finally, preserving the process. Behaviors by persons who commit sexual offenses against children fall upon a spectrum, from situational offenders (impulsive or opportunistic) to preferential offenders (those with a sustained pattern of sexual arousal to children).

    a.    The process of grooming has a powerful impact on children, their families, and community.  It is an intentional process to gain access to, build trust with, and create the opportunity for time alone to sexually abuse a child.  Grooming sets the stage for sexual abuse to occur, supports the continued abuse of a victim, and prevents or delays disclosure, which protects the offender from discovery. The more effective the grooming process, the less likely the child will disclose.

    b.    "Identifying a potential target" is how an offender chooses his victims, including characteristics of the child that the offender is seeking that may include developmental factors, physical factors, age, sex, social skills, and vulnerability factors.

    c.    "Establishing a connection" is how an offender establishes a relationship with the victim, which may include a relationship of love, trust, power or control, or any combination.  The relationship may be a positive one or a negative one, but it is an influence over the child.

      d.    Grooming techniques can include giving a child gifts and support, treating a child as special, isolating a child from his/her social support, gradually increasing sexually explicit talk about sex through jokes, providing sexual education, using and producing pornography, communicating through private and/or secret channels, and gradually desensitizing the child to touch.  Since grooming behaviors are also developed and utilized to prevent disclosure, an offender's true intentions may not be revealed for a long time, if ever.

Ms. Blackwell's testimony and opinions are based on her education, training, and extensive experience in this field, as well as her review of memoranda of interviews and other investigative materials in this case.

**Kenneth O'Donnell**

Kenneth O'Donnell has specialized knowledge regarding reading and interpreting flight navigation information used for international airline flights. He will offer expert testimony pertinent to jurisdiction for this case.  Mr. O'Donnell is an experienced pilot, who has flown domestic and international flights for the United States military and in commercial aviation. He served in the United States Navy until 2002, and then began a career as a flight instructor and pilot.  Kenneth O'Donnell also served as an adjunct professor of aviation at Mountain State University.

Kenneth O'Donnell is expected to testify that based on his training and experience, and in particular, experience reading and interpreting flight path data, and his review of documents pertaining to Emirates Airlines flight EK #229 on April 3, 2017, that following its take-off from Dubai, the flight path for this flight did not fly over United States air space until the approach into Seattle, Washington.  More specifically, Kenneth O'Donnell will testify that between approximately two (2) and four (4) hours into the flight after EK #229 departed from Dubai, this flight could not have been over United States air space.

Mr. O'Donnell's testimony and opinions are based on his education, training, and extensive experience in this field, as well as his review of records from Emirate Airlines pertaining to flight EK #229 on April 3, 2017 in this case. We understand that a stipulation by the parties as to the subject of Mr. O'Donnell's testimony may make it unnecessary that he testify at trial.

The government requests any discovery to which it is entitled under Fed.R.Crim.P. Rule 16, and particularly, Rule 16(b)(1)(C).  Please call if you have any questions.

Regards,

*s/Patricia Davies*
Patricia Davies
Assistant United States Attorney

Encls.