IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 19-cr-00224-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. DAKOTA MICHAEL HELLER,

    Defendant.

---

**GOVERNMENT'S TRIAL BRIEF**

---

The United States of America respectfully submits this trial brief regarding potential issues that may arise in trial of this matter. The Government respectfully requests leave to offer briefing, if necessary, on these or any additional issues that arise immediately prior to or during trial.

**RELEVANT FACTUAL BACKGROUND**

The defendant is charged with abusive sexual contact, in violation of 18 U.S.C. § 2244(b). The evidence at trial will show, *inter alia*, that on April 3, 2017, the defendant and his 16-year-old victim "Christopher"[1] were on a return flight from a church mission trip in Uganda. On the 15-hour flight between Dubai and Seattle, the defendant switched airline seats in order to sit next to Christopher. In order to help him sleep,

---

[1] As discussed below, and consistent with the Court's protective order in this case [Doc. #22] the Government, its witness, and its exhibits will refer to Minor #1 as "Christopher" at trial.

Christopher took Ambien that evidence will show was supplied to him by the defendant. Approximately two to three hours into the flight while the cabin was dark, the defendant reached beneath the blanket he had spread over himself and Christopher, and with Christopher groggy and half-asleep, unfastened Christopher's shorts, reached in his underwear, and masturbated Christopher to ejaculation.

At the time, Christopher was not fully aware of what had been done to him and fell back to sleep. Christopher later got up to use the airplane's restroom and found his shorts unfastened, and then fully realized defendant's abusive sexual contact. When the flight landed in Seattle, Christopher confronted the defendant and asked the defendant: "what did you do?" The defendant responded to Christopher, in substance, that he (the defendant) was sorry, he had made a mistake, and then asked Christopher not to tell anyone about the abusive sexual contact as it would ruin his (the defendant's) life.

After the defendant, Christopher, and the other church members returned to Colorado, the defendant contacted Christopher repeatedly, and ultimately convinced Christopher to meet him at a local Chipotle restaurant in April 2017. There, the defendant told Christopher in substance that: he was sorry; he had messed up; he thought it was possible that Christopher was gay because Christopher did not have a girlfriend (unlike the other two youngest attendees at the mission trip who had girlfriends); and he (the defendant) would get help in order to avoid future similar conduct. The defendant again asked Christopher not to disclose the sexual contact so as to not ruin defendant's life. Following the Chipotle meeting, the defendant continued

to communicate with Christopher on social media and in person. The defendant also later hired Christopher to work in the defendant's home renovation business, and the defendant and Christopher communicated regarding their work relationship and their shared interest in working out.

In late 2018, Christopher travelled on another church-related trip to Australia. There, he disclosed to a small group and later to a pastor regarding the defendant's abusive sexual contact. The pastor advised Christopher to report the abusive sexual contact in the United States. In January 2019, Christopher advised Gabe Kinzley, who is Christopher's uncle and also a youth ministry pastor at the Church, of defendant's abusive sexual contact on the international flight. Kinzley advised the Church leadership and reported the contact to law enforcement.

## POTENTIAL EVIDENTIARY ISSUES

### Testimony Under a Pseudonym

On June 18, 2019, the Court entered a protective order in this case that, among other things, provided that: "All persons acting in this case in a capacity described in 18 U.S.C. § 3509(d)(1)(B) shall, at trial and during any courtroom proceedings in this case, refer to Minor #1 using a pseudonym." [Doc. # 22]. Consistent with this Order, the Government, its witnesses, and its exhibits will refer to Minor #1 as "Christopher," a pseudonym that Minor #1 chose for himself. Christopher has reiterated that he does not want his real name used in court or in court documents to protect his privacy now and in the future. The Government asks that the defense team, its witnesses, and its exhibits also use "Christopher" to refer to Minor #1.

Under the circumstances in this case, the witness's use of a pseudonym does not "den[y] the defendant an opportunity to effectively cross-examine the witness." *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1142 (10th Cir. 2014).  The defendant and his counsel know Christopher's true name and the Government does not object to cross-examination of Christopher subject to the Rules of Evidence and this court's orders.  *Id*; *see also United States v. Kidd*, 385 F.Supp.3d 250, 255 (S.D.N.Y. 2019) (finding pseudonymous testimony of minor victims does not violate a defendant's Sixth Amendment rights).

Moreover, allowing a minor victim to testify under a pseudonym—as contemplated by the protective order entered in this case—is expressly permitted by 18 U.S.C. § 3509.  18 U.S.C. § 3509(d)(3) ("[T]he court may issue an order protecting a child from public disclosure of the name of or any other information concerning the child in the course of the proceedings, if the court determines that there is a significant possibility that such disclosure would be detrimental to the child.").  Christopher was 16 years old when he was masturbated to ejaculation in an airplane by a 35-year-old man. He hopes one day to move past this event and on with his life; keeping his true name out of the public record will help allow him to do this.

## Hearsay

As noted in previous filings, the Government expects the defense in this case to be that the defendant believed that Christopher welcomed the April 2017 sexual contact.  The Government has learned during its investigation in this matter that the defendant has made several self-serving, out-of-court statements purportedly

supporting this defense. Among other things, the defendant has stated to others or in writing that: Christopher repeatedly looked down the defendant's shorts; Christopher played "footsie" with the defendant in Uganda; Christopher held hands with the defendant on the airplane; and that Christopher otherwise sent signals to the defendant that he (Christopher) invited the sexual contact. The Government also has reason to believe that the defendant may intend to call a witness or witnesses to whom the defendant made these self-serving statements.

Of course, as the court knows, it is well-settled that the defendant may not properly offer evidence of his own out-of-court statements for their truth, as they are hearsay and not within any exception. Fed. R. Evid. 801, 802, 803. *See United States v. Harry*, 2013 WL 3270986, at *12 (D.N.M. June 3, 2013) ("Hearsay bars a party from presenting its own statements, such as a defendant . . . attempt[ing] to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination" (internal quotations and citations omitted)). The Government will object to any evidence offered by the defendant regarding his own out-of-court statements.

The Government does expect to offer out-of-court statements that are properly admissible, such as:

- Statements for other than "the truth of the matter asserted" such as to explain what happened subsequently, to show notice, and other permissible purposes. *See United States v. Caraway*, 534 F.3d 1290, 1299 (10th Cir. 2008) (explaining that a statement that is otherwise hearsay may be offered for a permissible purpose other than to prove

> the truth of the matter asserted);
> 
> - Witness' prior consistent statements under Rule 801(d)(1), as appropriate; and
> - The defendant's own statements, both oral and in writing, pursuant to Rule 801(d)(2).

## **Impeachment**

Federal Rule of Evidence 610 provides "evidence of a witness's religious beliefs or opinions is not admissible to attack or support the witness's credibility." The purpose of this rule is to "guard against the prejudice which may result from disclosure of a witness's faith." *United States v. Kalaydijian*, 784 F.2d. 53, 56 (2d Cir. 1986) (internal quotation marks omitted). In *Kalaydijian*, the Second Circuit rejected an argument Rule 610 draws a distinction between cross-examination on religious belief and *conduct resulting from* religious belief. *Id.* Instead, the court held that the Rule prohibits cross-examination based on "conduct that is significant only because of the witness's religious beliefs" in an effort to impeach that witness. *Id.*

To the extent defendant intends to attempt to impeach any of the witnesses called by the Government because they hold certain beliefs regarding homosexuality based upon their religion, the Government submits that such impeachment is improper under Rule 610.

## CONCLUSION

The Government respectfully submits its trial brief as to the aforementioned evidentiary issues that may arise at trial.

                        Respectfully submitted,

                        JASON R. DUNN
                        United States Attorney

By:    */s   Patricia Davies & Andrea Surratt*
           Assistant U.S. Attorneys
           United States Attorney's Office
           1801 California Street, Suite 1600
           Denver, Colorado 80202
           Telephone: (303) 454-0100
           E-mail: Patricia.davies@usdoj.gov;
           andrea.surratt@usdoj.gov