IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 19-cr-00224-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DAKOTA MICHAEL HELLER,

    Defendant.

---

## ORDER

---

This matter comes before the Court on defendant's Motion *In Limine* to Exclude All Confidential Communication Made by Dakota Heller Under the Clergy-Communicant Privilege [Docket No. 72].

Defendant requests that the Court exclude, under the priest-penitent privilege, communications that he made to several church members. Docket No. 72 at 1-2. These communications took several forms: text messages, oral communications, and audio recordings. *Id.* at 3-6. Defendant argues that these communications were given in confidence in the course of religious guidance. *Id.* at 1.

## I. THE PRIEST-PENITENT PRIVILEGE

Federal Rule of Evidence 501 states that, "[t]he common law–as interpreted by the United States courts in the light of reason and experience–governs a claim of privilege" unless the United States Constitution, a federal statute, or Supreme Court

rule says otherwise. The priest-penitent privilege[1] is not codified in a federal statute or rule, although all fifty states and the District of Columbia have enacted priest-penitent privilege statutes. *See* Christine P. Bartholomew, *Exorcising the Clergy Privilege*, 103 Va. L. Rev. 1015, 1020 (2017) (collecting statutes).

Several circuits have recognized the privilege under Rule 501, *see, e.g.*, *In re Grand Jury Investigation*, 918 F.2d 374 (3d Cir. 1990); *United States v. Dube*, 820 F.2d 886, 889-90 (7th Cir. 1987), and the Supreme Court has mentioned it favorably in dicta. *See Trammel v. United States*, 445 U.S. 40, 51 (1980) ("The priest-penitent privilege recognizes the human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive priestly consolation and guidance in return."); *Totten v. United States*, 92 U.S. 105, 107 (1875) ("[S]uits cannot be maintained which would require a disclosure of the confidences of the confessional."). The Tenth Circuit has not explicitly recognized the priest-penitent privilege but has implied that such a privilege exists. *See United States v. Dillard*, 795 F.3d 1191 (10th Cir. 2015) (agreeing that certain documents should remain sealed after the parties agreed that those documents fell within the priest-penitent privilege); *United States v. Benally*, 546 F.3d 1230, 1234 (10th Cir. 2008) ("Like other rules of evidence protecting the confidentiality of certain communications, such as . . . the priest-penitent privilege, Rule 606(b) denies the court access to what may be relevant information."), *abrogated on other grounds by Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017).

---

[1] There are various names to describe the privilege: priest-penitent, clergy-penitent, clergy-communicant, ecclesiastical privilege, clergy privilege, confessional privilege, among others.

The Court need not decide whether it should recognize such a privilege under Rule 501 because the communications that the government intends to admit at trial do not fall within the privilege's scope, as defined by defendant.

## II. THE COMMUNICATIONS

The government intends to introduce four different communications: (1) an audio-recorded conversation between defendant, Brian Carlucci (church pastor), Gabe Kinzley (church pastor), Kari Quesada (church pastor), defendant's roommates at the time, and defendant's mother ("group conversation"); (2) text messages between defendant, Carlucci, and Kinzley shortly after the group conversation; (3) text messages between defendant and Kinzley immediately after the group conversation; and (4) oral communications and text messages in 2018 and 2019 between defendant and Quesada. Docket No. 84 at 3. To be protected under the privilege, the communication must be "made (1) to a clergyperson (2) in his or her spiritual and professional capacity (3) with a reasonable expectation of confidentiality." Docket No. 72 at 6-7 (citing *In re Grand Jury*, 918 F.2d at 384).

### A. The Group Conversation

Once Kinzley learned about defendant's alleged sexual contact with Minor #1, Kinzley organized a meeting between himself, defendant, defendant's roommates at the time, defendant's mother, Carlucci, and Quesada. *Id.* at 5. The issues brought up were varied: the defendant discussed his own struggles and implied that he committed the sexual contact with Minor #1, his roommates alerted him that he could no longer live with them, and the church leadership told him that he was no longer welcome at the

3

church.  *Id.*; Docket No. 72-5 at 3, 6; Docket No. 84 at 9;

The Court finds that communications made during the group conversation are not covered by the priest-penitent privilege.  To be shielded from disclosure, the communications must be made with a reasonable expectation of confidentiality.  *In re Grand Jury*, 918 F.2d at 384.

The participants at the group conversation made it clear that they were going to "report[]" defendant to law enforcement and alert other families at the church of his alleged wrongdoings.  Docket No. 72-5 at 8, 12.  In response to being informed that other families would be told of his alleged actions, defendant said, "you guys gotta do what you gotta do."  *Id.* at 8.  In response to being informed that his alleged actions would be reported to law enforcement, defendant replied, "[t]hat's cool."  *Id.* at 12.  Although defendant did question why the pastors needed to divulge anything to church families, he never claimed that his conversations with the various people present were confidential; he simply questioned the necessity of informing other families.  *Id.* at 8.  Putting aside issues regarding the presence of third parties and the purpose of the group conversation, the Court determines that it is not reasonable to expect a conversation will be kept private after the parties to the conversation state otherwise.

Given the contemporaneous indications that defendant's communications were not confidential, the Court finds that the communications made during the group conversation are not privileged.

### B.  Communications Made After the Group Conversation

The same night as the group conversation, defendant sent several text

messages to some of the group participants. Immediately after the group conversation, Kinzley texted defendant, and the two had a conversation that ranged from defendant's confusion as to why Kinzley was not more upset with him, to logistical questions as to whether Minor #1 still wished to work for defendant's company. Docket 84 at 14-15. Additionally, shortly after the group conversation, defendant sent a group text message to Carlucci and Kinzley. *Id.* at 13. That conversation centered around what actions defendant could take to turn himself in. *Id.*

The Court finds that none of the text message communications that occurred shortly after the group conversation between defendant and the group are privileged because those communications were not made with a reasonable expectation of confidentiality.

As described above, the various clergy members made it clear at the group conversation that defendant's communications with them were not private and, instead, that they would be reporting his alleged actions to both law enforcement and church attendees. Docket No. 72-5 at 8, 12. Defendant could not reasonably believe that his communications with Kinzley that occurred immediately after the group conversation would be kept private – Kinzley told defendant moments before the text conversation that those communications would not be private. Defendant could also not reasonably believe that his communications with Kinzley and Carlucci, occurring shortly after the group conversation and on the same night, would be kept private – they both told him earlier that evening that defendant's communications with them were not private.

In fact, defendant stated in the group thread that Minor #1 should file an official complaint. Docket No. 72-2 at 1. Kinzley responded that he would let Minor #1 know

5

that defendant thought that Minor #1 should file an official complaint.  *Id.* at 2.  In other words, Kinzley reiterated that defendant's communications would be shared outside of the group thread.  In the private thread with Kinzley, Kinzley advised defendant that there would be a call to some undisclosed third party to gather more information on next steps, another indication that defendant's communications were not private.  Docket 84-3 at 8.  Thus, even the post group conversation text messages alerted defendant that his communications were not private.  This confirms that the conversations were not made with a reasonable expectation of privacy.

Because the group conversation members disclaimed any notions of privacy or confidentiality between them and defendant during that conversation, and continued to do so afterwards, the Court finds that the text message communications that occurred shortly after the group conversation are not privileged.

### C.  Communications With Kari Quesada

The government intends to introduce communications that defendant had with Quesada during 2018 and 2019.  Docket No. 84 at 6-7.  Some of these conversations occurred orally and others via text message.  *Id.*  The subjects varied.  *Id.*

The Court finds that defendant's communications with Quesada do not fall within the priest-penitent privilege because defendant's conversations with Quesada did not take place in a spiritual or professional capacity.

Quesada states in a declaration that she "never acted as a minister" or "any sort of spiritual advisor" for defendant.  Docket No. 84-2.  The Court is in no position to second-guess Quesada's opinion on that subject.  *Morales v. Portuondo*, 154 F. Supp.

2d 706, 729 (S.D.N.Y. 2001). In *Morales*, a man confessed to a priest that he committed a murder for which two other men were about to be sentenced. *Id.* at 709-10. The priest initially refused to relay the confession to anyone, including authorities. *Id.* at 710. However, the priest eventually decided that the conversation was not a formal confession; the Archdiocese of New York agreed. *Id.* at 714-15. The court refused to second-guess the priest and the Archdiocese in the practice of their religion, even though the communication arguably fell under the priest-penitent privilege. *Id.* at 729. The Court is equally unwilling to second-guess Quesada in the exercise of her religious practices.

Moreover, Quesada's role within the church is consistent with her statement that she did not minister to defendant. She is a children's minister for ages zero to ten years old. Docket 84-2 at 1, ¶ 3. At no point was she a minister to adults such as defendant. *Id.*

Because Quesada did not communicate with defendant in her spiritual or professional capacity, defendant's communications with her are not privileged.

It is therefore

**ORDERED** that defendant's Motion *In Limine* to Exclude All Confidential Communication Made by Dakota Heller Under the Clergy-Communicant Privilege [Docket No. 72] is denied.

DATED October 24, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge