IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 19-CR-00224-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

DAKOTA MICHAEL HELLER,

    Defendant.
_____

REPORTER'S TRANSCRIPT
Trial to Jury, Vol. 5
_____

Proceedings before the HONORABLE PHILIP A. BRIMMER, Chief Judge, United States District Court for the District of Colorado, commencing at 10:50 a.m., on the 1st day of November, 2019, in Courtroom A701, United States Courthouse, Denver, Colorado.

APPEARANCES

    Patricia Davies and Andrea Surratt, U.S. Attorney's Office, 1801 California Street, Suite 1600, Denver, CO 80202, appearing for the plaintiff.

    Kelly Christl, Natalie Stricklin and Jacob Rasch-Chabot, Office of the Federal Public Defender, 633 17th Street, Suite 1000, Denver, CO 80202, appearing for the defendant.

Proceeding Recorded by Mechanical Stenography, Transcription Produced via Computer by Janet M. Coppock, 901 19th Street, Room A257, Denver, Colorado, 80294, (303) 335-2106

| | |
|---|---|
| 1 | PROCEEDINGS |
| 2 | *THE COURT:* We are back on the record in the Heller |
| 3 | matter. The jury has another question. Specifically, the |
| 4 | question reads: What is the dictionary definition of, 1, |
| 5 | permission, 2, consent? Did the government get a copy of that |
| 6 | question? |
| 7 | *MS. SURRATT:* We did, Your Honor. |
| 8 | *THE COURT:* Did Mr. Heller get a copy of the question? |
| 9 | *MS. CHRISTL:* Yes, Your Honor. |
| 10 | *THE COURT:* So what is the government's suggested |
| 11 | response? |
| 12 | *MS. SURRATT:* Your Honor, we think the jury should be |
| 13 | instructed on the dictionary definition of each of these terms. |
| 14 | As the Court knows, this has become the key issue in this trial |
| 15 | and these two words do come directly from two of the jury |
| 16 | instructions in this case. |
| 17 | Permission obviously comes from Instruction No. 13, |
| 18 | the second element, which as the Court knows was the subject of |
| 19 | a jury question yesterday. And the word consent comes from |
| 20 | Instruction No. 14 talking about the victim's age. |
| 21 | *THE COURT:* And what proposed dictionary definition |
| 22 | would you give them? |
| 23 | *MS. SURRATT:* So Your Honor, we right now obviously |
| 24 | only have our phones, but Merriam Webster on line does have a |
| 25 | definition for each of these words. For permission, the |

1  definition is: (1), the act of permitting; and (2), formal
2  consent, authorization.
3         And the definition of consent in the same dictionary
4  is:  To give a assent or approval, agree.  And to be clear, we
5  don't insist on Merriam Webster.
6         It's simply an authoritative source that happens to
7  have an on-line version.  The source we would point out to for
8  the Court's authorization to take this action would be Rule
9  201, which allows for judicial notice of a fact not reasonably
10 subject to dispute.  I think we can all agree that there are
11 some dictionaries that have been long-standing authority, both
12 in this country in the legal forum and elsewhere that aren't
13 subject to dispute in terms of a source on what words in the
14 English language mean.
15        So, Your Honor, we think to the extent the jury thinks
16 this would be helpful, and they are doing exactly what we want
17 juries to do, that is not getting their phones back from the
18 court security officer and doing this themselves, I do think
19 that the Court should answer the jury's question.
20        *THE COURT:*  Okay.  What does Mr. Heller think about
21 defining those terms?
22        *MS. CHRISTL:*  Your Honor, I would propose that the
23 Court send back the -- with regard to the term consent, clearly
24 the reason for this is because the government misstated, in my
25 opinion, the law in its closing argument and kept hammering on

1  consent when that is not an element of the offense.  And I
2  objected to it four times and it continued.
3         So I think the Court should send the Black's Law
4  dictionary definition of age of consent back, which says:  The
5  age at which a person is legally capable of agreeing to
6  marriage or to sexual intercourse, or it could just be the age
7  at which a person is legally capable of agreeing to sexual
8  intercourse.
9         *THE COURT:*  And then what about permission?
10        *MS. CHRISTL:*  With regard to permission, Your Honor, I
11 think the Court should just send back a note saying it's the
12 ordinary definition.  Actually, before we get to that, I would
13 also ask that you explicitly send back something with regard to
14 consent saying consent is not an element in this case.
15        *THE COURT:*  All right.
16        *MS. CHRISTL:*  Because the law was misstated in closing
17 argument.  The law and my argument was misstated in closing
18 argument.
19        *THE COURT:*  Response to those points by the
20 government?
21        *MS. SURRATT:*  Your Honor, I don't object to the
22 Black's Law definition going back, but that's not what the jury
23 asked.  They asked for the dictionary definition of two words
24 that they are apparently having discussions about what those
25 words mean.  So we think we should answer the jury's question,

1    not some question that they didn't ask.

2              And, Your Honor, we didn't misstate the law in either

3    the government's summation or its rebuttal. We were making

4    arguments. And I don't think that Ms. Christl wants to get

5    into a debate about misstatement of the law or the record at

6    this juncture.

7              *THE COURT:* Here is what I am going to do. I am going

8    to send a note back to the jury that says: You should apply

9    your common understanding of the terms permission and consent.

10   Ms. Christl's suggestion is define age of consent. That's not

11   what they ask at all. Moreover, in terms of the government's

12   suggestion on consent, to give assent, approval, agree, that

13   doesn't tell them anything more than what people would commonly

14   understand the term consent to mean.

15             Moreover, the government's definition of permission,

16   if anything, would just confuse things. It doesn't -- those

17   two different alternative definitions really, I think that

18   would confuse the jury, if anything. So courts in other

19   circumstances have rejected requests to define terms, those two

20   types of terms, and rather instruct the jury that they should

21   apply the common usage of those terms, so that's what I am

22   going to do too.

23             Anything else?

24             *MS. SURRATT:* Not from the government.

25             *MS. CHRISTL:* Your Honor, I would ask that you either

1   add another sentence saying something about the terms as used
2   in the instructions or remind them that consent is not an
3   element of this offense because I really do think that this
4   question stems from the closing -- the rebuttal closing.
5         *THE COURT:*  You are making all sorts of assumptions,
6   Ms. Christl, that you cannot do.  The jury asked a question.
7   It's not for me to try to second-guess what they are trying to
8   drive at and then, you know, give them helpful ideas about what
9   you believe they are really concerned about.  The only way to
10  answer a question is to answer that question, not try to
11  second-guess something and supply them with information that
12  they didn't ask about.
13        *MS. CHRISTL:*  Your Honor, then would you say -- use
14  the common definition of permission when applying it to
15  Instruction 13, use the common understanding or definition of
16  consent as applies to Instruction No. 14?
17        *THE COURT:*  No, but I think that is a good idea to
18  make sure that we are defining them in context, so how about
19  this:  You should apply your common understanding of the terms
20  "permission," and "consent," as used in the instructions.
21        *MS. CHRISTL:*  That's fine, Your Honor.
22        *THE COURT:*  Any objection to that?
23        *MS. SURRATT:*  Vat sat no, Your Honor.
24        *THE COURT:*  We will be in recess, then, until we get a
25  question or verdict or it becomes 5:00 o'clock.  Thank you.

1         (Recess at 10:57 a.m.)

2         (Reconvened at 3:55 p.m.)

3         *THE COURT:* We are back on the record in the Heller

4  matter. The jury has sent out a note that states as follows:

5  We are not (underline) able to come to a unanimous decision.

6  We don't believe that we can get past this.

7         Proposed action in response on behalf of the United

8  States?

9         *MS. DAVIES:* Your Honor, in response to this

10 particular note, I am not aware of anything else we can

11 appropriately do in light of having previously submitted the

12 modified *Allen* charge, so I suspect the Court is appropriately

13 going to bring them in and that they will confirm they are, in

14 fact, unable to reach a verdict. And if the Court is ready to

15 make that step, I would renew our request to be allowed to

16 speak to the jury in order to have information to proceed going

17 forward.

18        *THE COURT:* Do you want to talk about that topic in

19 open court or at the bench?

20        *MS. DAVIES:* If the Court would allow a side bar, I

21 would appreciate that.

22        *THE COURT:* First of all, Ms. Christl, in terms of the

23 appropriate response to the jurors' note?

24        *MS. CHRISTL:* Your Honor, at this time we would move

25 for a mistrial. I think it's clear that they can't reach a

1  verdict and there is really nothing else that can be done.  I
2  think sending them back would be unduly coercive.
3          *THE COURT:*  Yeah, I agree.  Friday afternoon is the
4  great inducer of verdicts and they have indicated that they are
5  unable to reach a verdict.  This jury has worked really hard
6  and it was about this time yesterday that we sent them back.
7  And they worked for another day, but were unable to reach a
8  verdict, so I am going to bring them back in and confirm the
9  note and then let them go, declare a mistrial.
10         Attorneys approach.
11     (At the bench:)
12         *THE COURT:*  Ms. Christl, maybe you can come around
13 this way.
14         In terms of the notion of allowing the attorneys to
15 meet with the jurors if they wish to talk to the attorneys,
16 what's Mr. Heller's position?
17         *MS. CHRISTL:*  Your Honor, we don't have a strenuous
18 objection to it.  I mean, the government really wants to -- if
19 the government's purpose for doing this is to figure out if
20 they are going to try this again, we don't have an objection.
21 I feel like if it's an exercise in Monday morning
22 quarterbacking --
23         *THE COURT:*  Sure, there is some of that. You need to
24 be careful.  I am not going to hold the government to like --
25 in other words, if I allow it, you kind of have to assume,

```
 1   because I was trying to think of a way to restrict the
 2   questions from what could we do better versus what was the
 3   problem, and it's almost impossible to do that.
 4          MS. CHRISTL:  Right.  I would just ask that one of the
 5   agreements is that we are not allowed to share additional
 6   information, like --
 7          THE COURT:  Yeah, in other words, don't test out some
 8   additional fact.
 9          MS. CHRISTL:  Yes.  It's an exercise in listening, not
10   in telling them anything.
11          THE COURT:  And I will allow that, but I think that
12   it's probably best for me to explain that fact to the jury in
13   open court.  So if for some reason we need to keep this away
14   from some people in the audience, that's hard.  It's possible I
15   could tell them, because I usually the do, you know, for those
16   of you who wish, I will come back and personally thank you, and
17   then I could spring the idea on them at that time, but some
18   people may have left.  Of course, the people who left are
19   probably people who weren't going to stay anyway, but I could
20   do it either way.  It's up to you.
21          MS. CHRISTL:  Your Honor, just so I am clear, no one
22   else will be present other than the attorneys?
23          THE COURT:  And myself.
24          MS. CHRISTL:  And the jury.
25          THE COURT:  I will be present.
```

1           *MS. CHRISTL:*  Option two would be our preference.

2           *THE COURT:*  Oh, okay.

3           Any problem with that, Ms. Davies?

4           *MS. DAVIES:*  You are saying you are going to invite
5    them to stay to talk to you, and then you are going to at that
6    point ask them if they are willing to talk to us?

7           *THE COURT:*  Right.  So when I go back there, I will
8    thank them.  I have some little certificates for them.  But I
9    would also say, now, here is another thing.  The attorneys
10   would love to meet with you.  And I probably would say -- in
11   part I would say that there is a chance that this could be
12   tried again, and if so, feedback from this jury could be
13   helpful on that score.

14          So you can stick around.  I will let the attorneys in.
15   I will be there too.  They can ask questions of you.  You don't
16   have to answer their questions if you don't want to.  At any
17   point in time that you want to leave, you can leave; but if you
18   would like to, they would appreciate the opportunity to speak
19   with you.

20          *MS. DAVIES:*  That's fine, Your Honor.

21          *MS. CHRISTL:*  Okay.

22          *THE COURT:*  Want to do that?  Okay.

23      (In open court:)

24          All right.  Are we ready to bring the jury back in,
25   first of all, on behalf of the United States?

1              *MS. DAVIES:*  Yes, Your Honor.

2              *THE COURT:*  On behalf of Mr. Heller?

3              *MS. CHRISTL:*  Yes, Your Honor.

4              *THE COURT:*  Let's bring the jury back in.  Thank you.

5     Please be seated.

6              All right.  Ladies and gentlemen, who is the

7     foreperson?  Yes.  Okay, Ms. Ferrari, we received your last

8     note.  And am I correct that the jury is -- believes that it is

9     unable to reach a verdict in this particular case?

10             *FOREPERSON:*  I do believe so.

11             *THE COURT:*  Anyone disagree?

12             All right.  Ladies and gentlemen, I am going to go

13    ahead and excuse you at this time.  And I do so with the thanks

14    of the court.  You have been a really incredibly dedicated

15    group of jurors in this case.  The fact that I know that you

16    tried hard to reach a verdict, but as the instruction said, in

17    some cases if the jury doesn't reach a verdict, that's what

18    happens.  And that doesn't mean the system didn't work.  People

19    have their honest convictions and that's perfectly appropriate.

20             So at this point forward you can talk to people as

21    much or as little about the case as you choose.  It's totally

22    up to you.  You can write a book about it.  You can never think

23    about it again, whatever you want to do.  That's a personal

24    choice of yours.  If anyone connected with the case were to

25    contact you sometime after today and be critical of your

1  service, let me know.  You can call my chambers and I'll handle
2  that matter appropriately.
3       I know that you are busy people.  I know that it may
4  have been a little bit frustrating over the last couple of
5  days, but if some or all of you have just a few minutes more
6  time to stick around the jury room, I would like to swing by to
7  thank you personally.  Otherwise, ladies and gentlemen, at this
8  time you are excused.  Thank you very much.
9       (Jury excused.)
10      Thank you.  Please be seated.  Any objection to
11 exonerating Mr. Heller's bond at this time?
12      *MS. DAVIES:*  He is on bond right now and I don't have
13 his bond conditions in front of me, but could the Court
14 elucidate slightly?  I don't think he is under any conditions
15 at the moment, but yes, they may be exonerated.
16      *THE COURT:*  Ms. Christl, anything on that score?
17      *MS. CHRISTL:*  Your Honor, we just ask that the
18 conditions --
19      *THE COURT:*  Well, what I am saying is the government
20 would have to think about it.  The issue is whether or not
21 there is an intent to retry him and you want him to stay on
22 bond.  An exonerated bond would be that his bond would be --
23 it's gone.
24      *MS. DAVIES:*  Your Honor, that decision has not been
25 made.  He is, of course, on as I believe a personal

1  recognizance bond presently.  The government's intention

2  presently is to retry him, so I would request that the

3  conditions remain, minimal as they are.

4      *THE COURT:*  Any response, Ms. Christl?

5      *MS. CHRISTL:*  Your Honor, I guess at this point if

6  there is no resolution of the case, we just ask the conditions

7  remain the same.

8      *THE COURT:*  That's fine.

9      So Mr. Heller, do you understand that the terms and

10 conditions of the bond that you are on presently will remain in

11 effect?

12     *THE DEFENDANT:*  Yes, sir.

13     *THE COURT:*  All right.  So I will let the attorneys

14 know, then, okay, as to -- if you can stick around basically.

15 Otherwise, the Court will be in recess.  Thank you.

16     (Recess at 4:06 p.m.)

17                    REPORTER'S CERTIFICATE

18    I certify that the foregoing is a correct transcript from

19 the record of proceedings in the above-entitled matter.  Dated

20 at Denver, Colorado, this 14th day of November, 2019.

21

22                            _____S/Janet M. Coppock_____

23

24

25