IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 19-cr-00224-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. DAKOTA MICHAEL HELLER,

    Defendant.

---

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
OBJECTION TO KAREN BLACKWELL [Document #133]**

---

The United States of America respectfully submits this response to the defendant's objection to portions of Karen Blackwell's proposed expert testimony. For the reasons that follow, the defendant's objections should be overruled.

## BACKGROUND

On November 15, 2019, the Government re-noticed Ms. Karen Blackwell as an expert witness the Government intends to call at the retrial of Dakota Heller.[1] [Document #119]. In its November 15th notice, the Government omitted some of Ms. Blackwell's proposed testimony from its notice submitted before the October 28, 2019 trial, either because it has become irrelevant or because the Court precluded it in a pretrial ruling. Though the Government's position is—and always has been—that the

---

[1] The Government supplemented its notice of Dr. George Sam Wang on November 21, 2019. [Document # 130]. Ms. Blackwell's notice was also included in that supplement, but was submitted unchanged from November 15, 2019.

1

original notice for Ms. Blackwell covered these topics, the Government specifically included two additional areas of testimony that it expects to elicit from Ms. Blackwell:[2]

- Child sexual abuse victims may respond during the sexual abuse incident in various ways, including, by exhibiting a "frozen" response, and up to and including verbal and physical resistance to the abuse. A victim's response to sexual abuse may be influenced by various factors including, the prior relationship between victim and perpetrator, the victim's physical and mental state during the incident, the relative naiveté of the victim, and the setting and circumstances of the abuse incident.

- A child's body may be manipulated during the sexual abuse so that physiological signs of sexual arousal result (*i.e.*, a male child's erect penis or ejaculation, signs of arousal from a female child victim) even though the incident is sexual abuse. This physical reaction often impacts the disclosure process.

The defendant now objects to these additional areas of proposed testimony on the ground that it is irrelevant that sexual assault victims respond in a certain way, because, defendant argues, "the only relevant issue is [his] subjective knowledge" at the time he engaged in sexual contact with Christopher.  [Document #133, pg. 3].  Thus, defendant argues, Ms. Blackwell's proposed testimony that victims might "freeze" and/or that victims might exhibit physical signs of sexual arousal when their bodies are manipulated in a sexual fashion is irrelevant.

The defendant's objection also asks that the Court impose artificial constraints on other areas of Ms. Blackwell's testimony by requesting that the Court narrow Ms. Blackwell's testimony to only males aged 16 and above.

Finally, the defendant no longer wishes for Ms. Blackwell's testify to be confined to a rebuttal case and instead asks that she testify after Christopher — but not too soon

---

[2] The Government does not intend to elicit from Ms. Blackwell any topics on which the Court has already ruled, such as generalized pre-assault grooming behavior.

2

after Christopher — in the Government's case-in-chief. The Government intends to call Ms. Blackwell in its case-in-chief, but has not yet finalized the order of its witnesses. Because Ms. Blackwell will be testifying about a class of victims and not Christopher specifically, her testimony is not improper bolstering, no matter when she testifies. *United States v. Hadley*, 918 F.2d 848, 852 (9th Cir. 1990).

## ARGUMENT

### 1. *Ms. Blackwell's Testimony About Victims' Responses To Abuse Is Admissible and Proper*

Ms. Blackwell's testimony about victims' physical response to abuse satisfies Rule 702 because it will "help the trier of fact to understand the evidence" and "determine a fact in issue." As an initial matter, Ms. Blackwell was prepared to testify in the first trial that a victim's physical reaction to abuse is an important component of how, and when, victims may subsequently disclose the sexual abuse. A victim — especially an adolescent male victim — who does not physically resist his attacker may feel guilt and shame that he failed to protect himself, and thereby delay his disclosure. Similarly, victims who have unwanted physical responses to the assault — such as ejaculation and/or orgasm — are often embarrassed about their bodies' reaction to touch. This circumstance can be a significant barrier to a victim's disclosure of the abuse. Testimony by Ms. Blackwell regarding each of these are factors as impacting how and when a victim discloses the sexual abuse will help the jury understand Christopher's 18-month delayed disclosure. Thus, Ms. Blackwell's testimony on these subjects should be admitted on this basis alone to assist the jury in evaluating the victim's testimony.

Ms. Blackwell will also testify that the "freezing" or compliance response from a

3

victim is – based on her thousands of forensic interviews of abuse victims – consistent with her experience when a trusted adult perpetrates the abuse. This "freezing" or compliance response by the victim appears likely to be well outside the normal experience of the jury, and is thus appropriately a topic on which Ms. Blackwell's teaching on background concepts is appropriate and admissible. While it appears that the defendant hopes to have an expert testify that "[l]ack of resistance to sexual advances is the most common signal to indicate implied consent" to the act," it is common sense that this is not always true (and, frankly, is a dangerous and offensive view). Ms. Blackwell's testimony can provide context for the jury to assess the victim's testimony (*i.e.*, that a sexually-inexperienced, sleeping 16-year-old boy with limited life experience was not giving consent to having his penis rubbed by freezing in his airplane seat), and will assist the jury in evaluating the evidence regarding defendant's intent. Accordingly, Ms. Blackwell's testimony is relevant and admissible to help the jury understand Christopher's reaction, and thus, put Christopher's testimony and the defendant's actions in appropriate context.

Moreover, testimony of properly qualified experts regarding the general behavioral characteristics of abuse victims, such as proposed here, has been recognized as relevant and admissible by other courts. *See e.g.*, *United States v. Young*, 623 Fed. App'x 863, 865-66 (9th Cir. 2015) (testimony by expert who had conducted more than 1,800 forensic interview and had specialized knowledge regarding the "process of victimization" and "process of disclosure" regarding behavioral characteristics of victims was properly admitted). *See also United States v. Chapman*, 59 F.Supp.3d 1194 (D.N.M. 2014) (in prosecution for unlawful touching and applied

4

force case, discussing difference between expert testimony that improperly bolsters credibility of another witness and expert testimony that properly addresses topics consistent with other witness's testimony).   Accordingly, Ms. Blackwell's testimony properly educates the jury on issues relevant to the victim's testimony.

Moreover, as the Court knows, notwithstanding the defendant's instant relevance objection, what the defendant knew at the precise moment he put his hand on Christopher's penis was far from the only issue at the first trial.  Rather, the specter of the church's position on homosexuality was raised by the defendant, both through the defense cross-examination of the Government's witnesses and the direct testimony of his own.  One purpose of this inquiry was clear: the defendant wanted the jury to think about whether 16-year-old Christopher, who had never had a girlfriend, might have been exploring his sexuality on that plane, and thereby sent signals to the defendant that he welcomed the sexual contact.  To the extent that the jury was (and on retrial, will be) invited to infer that Christopher is homosexual because he did not push the defendant away, was aroused, and ejaculated, Ms. Blackwell's testimony is particularly important to educate the jury as to whether such a response is common amongst abuse victims.

Finally, fundamental to his relevancy rejection, the defendant assumes that the jury will be instructed in precisely the same way as it was in the first trial.  The Government, however, expects to provide to this Court a jury instruction and supporting analysis that does not put the entire onus on a sleeping victim of a sexual assault to make clear that abrupt, unexpected touching of his penis on an airplane is unwanted. As evidenced by the jury's notes during deliberations [*e.g.,* Documents #109, 112] and

other input it provided to the Court and parties, the jury clearly struggled with the elemental instruction given in the first trial. The government submits that it cannot be the intent of 18 U.S.C. § 2244 that a would-be sexual predator may avoid legal responsibility for sexual assault on an airplane without placing some onus on one initiating sexual contact that the contact is consented. Based on its further review of applicable law and its understanding of the input from the jury, the Government will be proposing an elemental jury instruction that comports with the law and addresses these concerns. As such and in any case, the defendant's claim that the *only* issue for the jury is his subjective intent in engaging in sexual contact with Christopher oversimplifies the issues in this case.

The defendant also objects to Ms. Blackwell's testimony about Christopher's physical response to the abuse because he claims Ms. Blackwell is not qualified to opine on the subject. Like all of Ms. Blackwell's opinions in this case, her knowledge about victims' physiological responses to abuse comes from her thousands of interviews with abused children over many years, as well as her education, review of the literature, and training. She is well qualified, and her testimony should not be excluded on this basis.

### 2. *Ms. Blackwell's Testimony Should Not Be Artificially Limited To 16-Year-Old And Older Male Victims*

While Ms. Blackwell will focus her testimony on adolescent males as she did at the first trial, narrowing her testimony to *only* 16-year-old and older adolescent males would be improper. First, Ms. Blackwell's training and experience is not limited to 16-year-old males. She has gained her experience over years of interviewing children of

all ages.  All of this experience informs the opinions about which she will be testifying in this trial as to the updated notice. [Document #130].

Some of Ms. Blackwell's testimony relevant to sexual abuse is common across ages, and cabining that testimony to only 16-year-old males and older will be unhelpful at best and misleading at worst.  The defendant has pointed to nothing in Ms. Blackwell's testimony from the first trial that he believes was improperly prejudicial as a result of being overly broad.  Rather, the defendant is trying to narrow Ms. Blackwell's testimony to the point where it becomes disjointed and unhelpful, not for any proper reason rooted in the law.  Tellingly, he cites no authority supporting this artificial limitation.  Cases cited in the Court's Order and the government's Rule 702 briefing make clear that expert testimony based on experience garnered working with a variety of minor sexual abuse victims is proper and admissible.  (Document # 65, pp. 4-5; Document # 62, pp. 7-11).

Moreover, in terms of responses to sexual abuse, whether 16 is the age of consent in some federal statutes is entirely irrelevant and arbitrary as it relates to the proposed expert testimony.  Abused boys and girls do not care whether certain federal statutes allow them to consent to sex with adult men at age 16.  Ms. Blackwell will testify that biological age is less important than life experience, the circumstances surrounding the abuse, the victim's relationship with the abuser, among other factors.  In other words, while age is one factor, abuse victims' reactions are informed by the factors that Ms. Blackwell will testify about, not whether the law says they are of a biological age that allows them to consent to sex on an airplane.  Again, the Court's prior ruling noted the defendant's claim that age 16 is the age of consent, and

nonetheless found Ms. Blackwell's testimony pertinent and admissible under a Rule 403 balancing test.  [Document # 65, pg. 5].

## CONCLUSION

The Government respectfully requests that Karen Blackwell be permitted to testify as described in the Government's November 15, 2019 notice.

          Respectfully submitted,

          JASON R. DUNN
          United States Attorney

By:    */s  Patricia Davies & Andrea Surratt*
          Assistant U.S. Attorneys
          United States Attorney's Office
          1801 California Street, Suite 1600
          Denver, Colorado 80202
          Telephone: (303) 454-0100
          E-mail: patricia.davies@usdoj.gov;
          andrea.surratt@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on this 29th day of November, 2019, I electronically filed the foregoing **GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTION TO KAREN BLACKWELL [Document #133]** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/ *Amy McDaniel*
Amy McDaniel
Legal Assistant
U.S. Attorney's Office