1
               IN THE UNITED STATES DISTRICT COURT
2
                 FOR THE DISTRICT OF COLORADO

3
Criminal Action No. 19-CR-00224-PAB

4
UNITED STATES OF AMERICA,

5
    Plaintiff,

6
vs.

7
DAKOTA MICHAEL HELLER,

8
    Defendant.
_____

9
                REPORTER'S TRANSCRIPT
                 Hearing on Motion

10
_____

11
      Proceedings before the HONORABLE PHILIP A. BRIMMER,

12
Chief Judge, United States District Court for the District of

13
Colorado, commencing at 10:11 a.m., on the 27th day of

14
September, 2019, in Courtroom A701, United States Courthouse,

15
Denver, Colorado.

16
                   APPEARANCES

17
      Julia Martinez, U.S. Attorney's Office,

18
1801 California Street, Suite 1600, Denver, CO 80202, appearing

19
for the plaintiff.

20
      Kelly Christl,  Office of the Federal Public Defender,

21
633 17th Street, Suite 1000, Denver, CO 80202, appearing for

22
the defendant.

23

24
Proceeding Recorded by Mechanical Stenography, Transcription
 Produced via Computer by Janet M. Coppock, 901 19th Street,
25
    Room A257, Denver, Colorado, 80294, (303) 335-2106

1                          PROCEEDINGS

2            *THE COURT:*  The matter before the Court is United

3    States of America v. Dakota Michael Heller.  This is Criminal

4    Case 19-CR-224.

5            Ms. Davies and Ms. Surratt are here on behalf of the

6    United States.  Good morning to you.

7            *MS. DAVIES:*  Good morning, Your Honor.

8            *THE COURT:*  Ms. Christl is here on behalf of

9    Mr. Heller.  Mr. Heller is here.  He is on bond.  Good morning

10   to both of you.

11           *MS. CHRISTL:*  Good morning, Your Honor.  Also,

12   Ms. Stricklin had another court appearance at 10:00 a.m.  Once

13   she is finished with that court appearance, she may join.

14           *THE COURT:*  That's perfect fine because she is

15   co-counsel.

16           We are here today on the motion filed by the

17   government for reconsideration and to grant an ends of justice

18   trial continuance.  This is Docket No. 45.  It's been quite

19   well briefed, but I see an exhibit list for some reason, but

20   I'll allow brief argument first from the government.

21           Go ahead.

22           *MS. DAVIES:*  Thank you, Your Honor.

23           Your Honor, two preliminary matters before I address

24   what I believe are the issues that frame this Court's analysis.

25   First, I sincerely, the government sincerely appreciates being

1    heard by the Court this morning.  And secondly, notwithstanding

2    my arguments today, not for a moment do I overlook that it is

3    my mistake that has led us to today's proceeding.  It was my

4    misunderstanding of the Court's procedure and the timing for

5    expert disclosure.

6           For the Court's interest, if any, to make sure that no

7    other of my colleagues find themselves in the same situation, I

8    have sent an e-mail to the criminal division advising of the

9    Court's procedure.  Now, on that point, however, Your Honor,

10   because the government's diligence and the reason for the delay

11   has been raised in this Court's analysis, I would briefly add

12   to that chronology.

13          I first note and appreciate the finding in the order

14   that there was no bad faith by the government in its

15   disclosures timing, and I believe that's appropriate on this

16   report.  As to diligence, I looked in several places for

17   guidance on this Court's deadline, but I admittedly looked in

18   the wrong places.  I have never had a trial before this Court.

19   I have never had any proceeding that approached the necessity

20   for an expert disclosure.  That's not an excuse.  It's an

21   explanation.

22          So when I looked at the Court's docket, I did so as of

23   July 2nd forward with the misunderstanding that when the Court

24   reset deadlines in response to the defense motion for a 90-day

25   excludable time finding, that all new dates would be reflected.

1    And that, of course, wasn't right. I needed to go back to the

2    earlier docket and understand how this Court handles those

3    disclosures.  I looked at the Court's practice standards

4    multiple times and I tried to confer with the defense counsel

5    before the deadline lapsed.

6         It's not my practice to consume the Court's time with

7    details of lawyers' communications, but because the defense

8    opposition to the motion, that is Document 54, several times

9    questioned the government's diligence, I thought there was

10    information that might be instructive to the Court.

11         Exhibit 2, which is before the Court and which was

12    supplied to defense counsel this morning before the hearing,

13    was an e-mail exchange with the FPD on August 26th and I was

14    asking to discuss certain trial logistics.  On August 27th I

15    got a response that Ms. Christl was on leave until

16    September 9th and would not be checking e-mails.

17         Exhibit 3, which is also before the Court, is my

18    August 30th e-mail, which was before the deadline elapsed,

19    asking specifically regarding expert disclosure timing.  And I

20    did not receive a response to that until September 10th.

21    Again, Your Honor, this is to provide context to the issue of

22    whether or not I acted without diligence, whether or not there

23    are -- context this Court should be aware of.

24         Now, Your Honor, we get to the issue of whether or not

25    reconsideration is appropriate here.  At bottom, manifest

1    injustice the government submits is that in our system to reach

2    just outcomes, we do so through truth seeking.  And that was

3    discussed in *United States v. Ivory*, 131 F. Appx. 628.  And I

4    submit the exclusion of the government's expert under the

5    circumstances here is a disproportionate remedy and that will

6    compromise that truth-seeking function.

7         It's a disproportionate remedy for the same reasons

8    the Court noted in its order, and that is that excluding

9    testimony is a rare, rare remedy and almost never appropriate

10   absent a constitutional violation, which is not present here.

11   And when the Court looks at that, it considers the reasons for

12   the delay.  That's why I thought it was worth the Court's time

13   to understand the chronology here.

14        The extent of the prejudice, the Court has noted the

15   defendant had expressed none and that it discerned none, and

16   the feasibility of curing the problem with the continuance,

17   which, of course, the government submits is possible.

18        Now, the reason why this expert is so important for

19   the truth-seeking function of the jury is that the government

20   expects that its expert would educate the jury and provide

21   context for evidence that the jury will hear.  The government

22   submits that the defense in this case is essentially going to

23   be to question the victim in such a way so as to suggest that

24   the victim is responsible in some respect for the abusive

25   sexual contact.

1          The government's evidence will be the victim will

2     describe that the defendant is his former youth minister, the

3     details of the abusive sexual contact, that the defendant asked

4     him in the immediate aftermath not to disclose, that it would

5     ruin the defendant's life, that the defendant met again

6     post-contact again requesting that he not disclose, that he

7     maintained contact with the victim and he ultimately hired him

8     as an employee.

9          Other witnesses in the case through direct examination

10    and cross-examination will describe the interactions between

11    the victim and the defendant both before, around the time of

12    and after the incident.  And what the proposed expert will do,

13    Your Honor, will educate the jury and provide information and

14    context so that the jurors are able to put all that evidence

15    into context and it will thus assist the truth-seeking

16    function.

17         She will describe the factors that impact the timing

18    of disclosure.  She will describe the context for interactions

19    between victims and perpetrators after an incident like the

20    incident alleged here.  And fortunately for most of us and for

21    the jury, those are circumstances in context that are outside

22    our ordinary experience.  And she will educate the jury on

23    those important issues so that they can more effectively do

24    their jobs.

25         The bases for her expertise is Government's Exhibit 1,

1   which is the before the Court.  It describes her lengthy

2   educational training and practical pedigree that allows her to

3   provide that information that will be helpful to the jury.

4          Your Honor, the other factor that was discussed in the

5   defense response and that I would like to address briefly is

6   the issue of prejudice, that if the Court grants the requested

7   continuance, that the Court should not do so, according to the

8   defendant, because of prejudice.

9          As the Court notes, this defendant is not in custody.

10  And as the Court noted in its order, the defendant articulated

11  no prejudice and the Court could discern none.  Now, in the

12  most recent response at Docket 54, the defendant now says and

13  cites case law saying if there is a prolonged delay, that can

14  cause distress to the defendant.

15         But the government isn't seeking a long delay.  The

16  government is ready to go on October 15th.  It only seeks the

17  continuance mindful of its mistake in disclosing a month before

18  trial the expert disclosure rather than on the Court's deadline

19  and so asks this Court to grant that continuance only as much

20  as the defendant requires.  Your Honor, the government

21  attempted to find out what that was so it could provide that

22  information to the Court but did not get a response so cannot

23  unfortunately advise the Court as to what continuance may be

24  appropriate here.

25         I do want to correct one point, Your Honor.  The

1    defendant did request disclosure through the discovery

2    conference memo.  I had reviewed correspondence, had seen no

3    request and did not go back and review the discovery conference

4    memo.

5            THE COURT:  People forget about that order and they

6    shouldn't because it's an order of the Court.

7            All right.  Anything else, Ms. Davies?

8            MS. DAVIES:  Very quickly.  The only previous

9    continuance in this case was on defense motion.  That's for 90

10   days.  The response at Document 54 indicates that the prejudice

11   is because lead counsel has a trial in December 9th and perhaps

12   another trial sometime before the end of the year.  I submit

13   with a trial set for three days there is plenty of time within

14   the parameters that would still move this case forward to

15   complete that trial.

16           And if the Court has no further questions for me at

17   this point, I submit.

18           THE COURT:  Thank you.

19           Ms. Christl, go ahead.

20           MS. CHRISTL:  Thank you, Your Honor.

21           Your Honor, as attorneys, one of our -- and trial

22   lawyers in particular -- one of our jobs is to be strategic

23   about the arguments that we make with the Court and the way

24   that we approach certain issues.  The reason we are here today

25   is because the government had a change in strategy.  They

1    initially filed something with -- they filed a pleading stating

2    that they were opposing a continuance in this case and also

3    were seeking to late disclose an expert.

4         This case is not appropriate for a motion to

5    reconsider for a change in strategy.  The Court shouldn't

6    reconsider its written order regarding the late disclosure of

7    the expert witness because there has not been a manifest

8    injustice.  In the government's own pleading, it cites that the

9    Court should reconsider because of the manifest injustice, yet

10   on Page 4 the government says, quote, "The Court should

11   reconsider its order to avoid the potential injustice inherent

12   in excluding evidence from the government's case."

13        That potential injustice inherent is a blanket

14   proposition.  And there is a big difference between a manifest

15   injustice and the potential for some sort of injustice.  And

16   it's our position that the Court should not reconsider because

17   the government has not shown a manifest injustice in this case.

18        With regard to some -- I just to want clarify a few

19   things on the record since it's part of the government's

20   exhibit binder where they show e-mails between myself,

21   Ms. Stricklin and the prosecution team.  And I think it's

22   important for the Court to know that, one, this case was -- I

23   did take a leave for one week at the end of August.  When I

24   left on Monday, the day that one of the government's e-mails is

25   from, I believed that this case was going to be resolved.  We

1    had a plea contingent on the victim's acceptance.

2            The victim did not decide to go along with that plea,

3    which he has every right and reason to do.  However, that was

4    my understanding.  That's why Ms. Stricklin was going to step

5    in to assist because I felt like if this were going to result

6    in a plea of guilty, that we needed to move quickly on it.

7    That's why Ms. Stricklin was called to step in.

8            So her e-mail where she says, "I think Kelly is not

9    back until the 9th, I don't think she is checking e-mails" was

10   mostly in response to like not much is probably going to happen

11   in terms of like having a meaningful discussion about trial

12   until then.

13           And I will note for the Court that while I was on

14   leave the last week of August until August 30th, my

15   out-of-office notification, which I believe the government

16   would have gotten when e-mailing me, was I was on leave the

17   last week of August not checking e-mail, however, I would be

18   out of town for work the first week of September and checking

19   e-mail.  And while I understand that -- I am not necessarily

20   faulting the government.  I don't think this is any deliberate

21   late disclosure on their part to alter trial strategy, and I

22   understand that the Court already found this was not in bad

23   faith.  And I do not think that it was in bad faith, but I

24   think the government didn't exercise diligence.

25           One, they didn't read the discovery conference memo.

1     And I think part of the reason for this is that the prosecution

2     wasn't -- didn't even know that I had made an expert disclosure

3     request which is not -- certainly the defense has the

4     discretion to either request it or not request it.  It was

5     clear from the discovery conference memo that I did request it,

6     so I think that they were not diligent in looking to see what

7     my actual request was regarding discovery.  And then they

8     weren't diligent and they didn't make the disclosure on

9     August 30th.

10            I understand that I was on leave that day.  However, I

11    was back in the office that Tuesday, I think it was Labor Day.

12    And had I received an expert disclosure that day, I was working

13    remotely out of town on an investigation on another case.  I

14    could have responded.  I could have filed something with the

15    Court if I needed additional time asking for additional time,

16    and I think that's an important point to make.

17            This Court's original expert disclosure deadline was

18    June 10th.  And I understand -- and I think it would have been

19    reasonable for the government to make a disclosure on

20    August 30th because that fell in line with the government's --

21    with the Court's previous order.  However, I have in dozens of

22    cases, including this case, when I see a deadline coming up, if

23    I am not prepared to file what needs to be filed on that date,

24    I always seek leave of the Court for -- to do it later.

25            In this case the date of the original motions filing

1    deadline, I wasn't ready to file my motion.  Therefore, I asked

2    the government if they opposed an extra week or maybe it was

3    nine days for me to file my motion.  I asked the Court for that

4    permission too.  And I think that that should be the practice

5    of the government in these situations.  If they are not ready

6    to file something, they should ask leave of Court like we have

7    to ask leave of Court to get extensions of time on things.

8         And the reason I bring this up is because one of the

9    things the Court has to consider in granting the continuance is

10   the government's diligence.  And I would submit that they have

11   not been diligent because they did not recognize that I'd made

12   an expert disclosure request because they disclosed the expert

13   late under any sort of scenario.  And I don't see how the Court

14   could find that they were diligent, which is one of the factors

15   the Court has to consider in granting the continuance.

16        Additionally, the Court has to consider prejudice.

17   And I will admit there is not any specific item of prejudice

18   that I can identify other than the fact that Mr. Heller has

19   been waiting a long time for his trial.  I needed the extra 90

20   days to investigate the case and be prepared for trial

21   initially, which was already a delay for him.  I will note that

22   this case, the conduct occurred in I believe it was March or

23   April of 2017.

24        Mr. Heller -- the report was made and the FBI began

25   investigating in January of 2019.  And now we are looking at a

1    trial date potentially a year after the original complaint,

2    depending upon what the Court decides to do in this case.

3    That's a long time for Mr. Heller's life to be in limbo and to

4    be waiting around for this.

5            Additionally, I think the Court has to consider the

6    feasibility of the schedules.  And I think this also falls

7    under prejudice because I do have a full case load and it's not

8    very usual for a federal trial attorney to have -- defense

9    attorney to have multiple trials set within a short period of

10   time, but I do.

11           THE COURT:  Well, it actually is.  It's just that to

12   have them actually go is unusual.  And I know for a fact that

13   you have got several that are looming as possibilities.

14           MS. CHRISTL:  Correct, Your Honor.  And I believe that

15   the case in front of Judge Domenico on December 8th is -- I

16   have no reason to believe that it's not going to trial.  I am

17   preparing it to go to trial on that date.  There has been a

18   recent change in prosecutors, and I have inquired in order to

19   be prepared for this hearing from the prosecution who the new

20   prosecutor is going to be.  I sent that e-mail I believe on

21   Monday and haven't heard -- or I heard back they would look

22   into it and see who it was reassigned to, but I have not

23   learned the identity of any prosecutor on that case.

24           But it's a case where at this point I do anticipate it

25   going.  Plea negotiations had broken down with the last

1    prosecutor and I think that case will go to trial.  And as this

2    Court is also aware, I have another matter in front of Your

3    Honor that I believe the trial date is still set.

4              THE COURT:  It may not go.

5              MS. CHRISTL:  I don't think it will go the last week

6    of October because I have not been able to communicate with my

7    client since he has been out of ADX for his psychological

8    evaluation, competency evaluation.  But that client also does

9    have a speedy trial right, and I can tell the Court with some

10   certainty on that case that I don't anticipate filing any

11   motions on that case, so if my client is competent, I would

12   anticipate that that case gets set for trial fairly quickly.

13              And while I think normally under most circumstances I

14   would be able to go to trial back-to-back weeks or every -- you

15   know, like a week or two apart, however, I think this case has

16   really kind of shown me why that might not be feasible because

17   if this were to happen on another case where the government is

18   filing a 404(b) motion, and I am not suggesting that that's

19   late, but if they were to file something before trial that I

20   have to respond to and put a lot of time and effort into a

21   response, I got a new batch of discovery yesterday with new

22   interviews from witnesses, that -- and I am again not faulting

23   them.  I understand that they are still investigating their

24   case.  However, this is why I feel like it would not be

25   feasible for me to try back-to-back cases.

1       *THE COURT:*  That's the norm in civil litigation.  You

2   know, you just swamp your opponent days before trial with all

3   sorts of nonsense, but you are right, it usually doesn't happen

4   too much in criminal cases.

5       *MS. CHRISTL:*  In my opinion, the stakes are much

6   higher in criminal cases when you are talking about someone

7   going to prison.

8       *THE COURT:*  For sure.

9       *MS. CHRISTL:*  And I believe that that falls under the

10  feasibility of a continuance and also prejudice to my client

11  because if I am distracted with another trial and late

12  disclosures also on that case or, you know, a 404(b) motion on

13  that case, then I am in a position where my client is not

14  getting the best defense that he can get.  So I do think that

15  there is the potential for him to be prejudiced if this Court

16  continues this hearing to a time when my schedule is going to

17  be much busier.

18      *THE COURT:*  Okay.  Thank you, Ms. Christl.

19      Ms. Davies?

20      *MS. DAVIES:*  Your Honor, I want to make two points and

21  then answer any questions the Court has.

22      As to the 404(b) disclosure, it was precisely as

23  required by the discovery conference memo timing.  And as to

24  any additional discovery, as we conduct trial preparation

25  interviews, we, of course, have a discovery obligation.  We are

1   meeting it.  There is no other additional material being

2   supplied, only that which we are required under Rule 16 given

3   the posture of the case.

4        Your Honor, I would just note that notwithstanding

5   Ms. Christl's last remarks, she began by saying there is no

6   specific identification of prejudice.  And, Your Honor, under

7   the case law that's been cited in the briefs, I just can't

8   overstate how important that is in a situation where the

9   government has articulated why exclusion of this witness --

10       THE COURT:  Ms. Stricklin, you can have a seat at

11  counsel table if you want.

12       MS. STRICKLIN:  Thank you, Your Honor.

13       THE COURT:  Sorry, Ms. Davies.  Go ahead.

14       MS. DAVIES:  -- why the exclusion of this witness does

15  constitute manifest injustice.  And in the absence of

16  prejudice, Your Honor, I respectfully submit that we have made

17  our showing and that this Court can appropriately reconsider

18  and should do so to allow the defendant the time necessary as

19  they see fit to litigate the expert issues for the disclosure

20  they have now had for two weeks and on whatever schedule works

21  for this Court and for counsel.

22       THE COURT:  Thank you.

23       The motion before the Court is the government's motion

24  to reconsider the Court's order, Docket No. 41.  That's not a

25  very good title.  This is really a motion for leave for the

1    United States to reconsider its position because the United

2    States claimed when we were -- when they filed the original

3    motion, which was Docket No. 33, that it didn't want a

4    continuance because it didn't want to put the victim through

5    that.  It's only when the Court then denied the request to

6    allow it to file its expert disclosures that the government

7    then did a 180-degree turn and said that now talking to the

8    victim, the victim doesn't want it.

9          And then the other thing that the Court needs to take

10    into account in addition to the various consequences of a

11    decision either way is what exactly the government did wrong

12    for purposes of assessing factors under, you know, a motion for

13    reconsideration.

14          First of all, let's focus in on the change in

15    position.  If this were just a pure -- if the government just

16    didn't think it through very well -- they may not have.  If the

17    government was doing it and had kind of an air of a litigation

18    tactic, that wouldn't be a very good reason.  This is a little

19    bit different.  We are dealing with a victim of alleged sexual

20    abuse and the government is trying to take into account that

21    person's interest.  And that person apparently, I am not sure

22    to what extent he had been consulted in any detail before, but

23    he then decides, well, you know, I would go along with this.

24          I think that's a little bit different situation.  It's

25    really a situation where the government is trying to deal with

1    the sensitivities or the interests of a victim of sexual abuse.

2    That to me is certainly not a litigation strategy thing and

3    it's not an act of pure negligence.  So I think that when you

4    weigh that, it's not such a serious error by the government.

5         The next thing would be what about the fact that the

6    government did not follow the Court's rules.  As I said before,

7    there's no implication and Ms. Christl doesn't claim that the

8    government in any way had any type of bad faith.  There is zero

9    bad faith.  Instead, it's a situation where Ms. Christl

10   mentions for one thing the government could have filed this

11   disclosure early on, and it's true, it could have.

12        But given the fact that the trial got continued when

13   the Court granted the defendant's motion, it essentially reset

14   the deadline.  So even though the government could have, as I

15   said in my previous order, filed notice of this particular

16   expert, that's not really the issue either.  The issue really

17   becomes what the government did wrong more recently.  And as I

18   said in the order, the government should have filed its

19   disclosures by the deadline and it didn't; and as a result,

20   they are filed two weeks late.  Now let's figure out what

21   weight that we give to all of that.

22        No. 1, I would say that while I found in that order,

23   and it's true, the government doesn't have any good reason,

24   this is not a situation where the government was, you know,

25   just blatantly missed something that's crystal clear.  In fact,

1   it's evident from the correspondence that the government was

2   under a misimpression.  It thought that there wasn't a deadline

3   set.  It was inquiring of the defendant in order to go ahead

4   and establish some type of a deadline.

5           The other thing is that the government came to the

6   conclusion that it needed this type of an expert based upon

7   what it describes as an evolution, but basically it's the

8   situation that it began to believe that there might be a

9   suggestion -- this may be the nature of this particular

10   charge -- but that you could actually base a defense on some

11   type of consent.  And for that reason it needed an expert such

12   as the one that the government has identified who would provide

13   testimony about situations where -- regarding that topic and

14   which would be outside of the experience of a typical juror.

15           And, in fact, based upon what the government says is

16   the subject matter of this particular expert, in fact it is

17   true that that type of testimony would be outside of the ken of

18   an average juror and therefore would be an appropriate topic at

19   least for expert testimony.

20           Normally a two-week failure to disclose probably would

21   not loom large.  The reason it does in this particular case is

22   because it is coming so soon before trial.  And Ms. Christl

23   indicated in her response to the government's Docket No. 33

24   that, you know, she plans on challenging the expert and will

25   attempt to exclude many of the expert's opinions, and as a

1  result, simply wouldn't because of that two-week period be able

2  to accomplish that before the trial date.  And as a result,

3  Mr. Heller would be prejudiced.  And there is no question that

4  that's true.

5       But that then drew the Court's attention to the third

6  factor, which was the prejudice, and because Mr. Heller is on

7  bond, because no type of prejudice had been identified, that

8  factor weighed in favor of the government except for the fact

9  that the government said it didn't want a continuance.

10  Ms. Christl today has indicated that there in fact could be

11  some prejudice, one of them being just the fact that

12  Mr. Heller, the longer he has to wait, the more kind of

13  aggravation or anxiety it may be for him.  Of course, he did

14  ask for an exclusion of 90 days, but that was not so much.

15  Maybe it took into account some disadvantage for him in terms

16  of delay, but I granted that exclusion because Ms. Christl

17  needed the time to prepare adequately for trial.

18       I think that the issue here really becomes whether --

19  two things which the parties didn't really fully focus on, and

20  that is can we grant a continuation of trial within the time

21  allowed for speedy, which the 90 days that I excluded doesn't

22  run until September 30th, so we still have 36 days left.  The

23  36 days would start to run on October 1st.  And so one question

24  is whether or not we would be able to try this case on or

25  before November 5th.

1          The other question is whether if we need to exclude

2     time from speedy trial, whether this set of circumstances would

3     allow the Court to do so.  Mr. Rasch-Chabot, who authored the

4     defendant's response to the government's motion for

5     reconsideration, did talk about speedy trial.  He in his

6     response did not identify some -- didn't identify any type of

7     case that would suggest that you couldn't.  The issue would

8     really boil down to whether or not the circumstances that the

9     government presents here would justify an exclusion of time

10    under the Speedy Trial Act.

11         So let me ask you that, Ms. Christl.  If we were to

12    try to reset this matter within speedy trial, so it would

13    probably be like a two-week continuance, would Mr. Heller be

14    able to get ready for trial?  And, of course, that may --

15    somehow we would have to try to squeeze in a challenge to the

16    expert, that type of thing.

17         MS. CHRISTL:  Your Honor, could I just take a moment

18    to confer with Ms. Stricklin?

19         THE COURT:  Absolutely, sure.

20         MS. CHRISTL:  Your Honor, I do believe that that would

21    be possible so long as the Court has time for us to litigate

22    the issue regarding the expert.

23         THE COURT:  Well, that is a good question.  What type

24    of schedule would you anticipate?  In other words, when could

25    you file a motion and how long do you think that hearing might

1  last?

2        MS. CHRISTL:  Your Honor, I think it would make sense

3  to like set some sort of briefing schedule.  If we could

4  perhaps have a week from today or Monday to file a response.

5        THE COURT:  It would be a motion under 702 presumably?

6        MS. CHRISTL:  Correct, Your Honor.

7        THE COURT:  So there would be a motion.  It wouldn't

8  be a response to anything really.

9        MS. CHRISTL:  Yes, I'm sorry, a motion to exclude.

10  And also I am aware that that filing -- and I can tell the

11  Court with certainty that will be filed -- that filing also

12  would stop the speedy trial clock so.  I think setting this

13  case in like the last week of October, but probably preferably

14  the first week of November.

15        THE COURT:  I can't do the first week of November.  I

16  will be out of town.

17        MS. CHRISTL:  Okay.  Then the last week of October I

18  think will be --

19        THE COURT:  Yeah.  That would presume that the McGowan

20  gown case is continued, but it seems like it's highly likely

21  that that would take place.

22        Ms. Davies, response?

23        MS. DAVIES:  Your Honor, with respect to trial

24  beginning the week of October 28th, the government will be

25  available.  We do have one scheduling issue I will just alert

1   the Court to, and that is the case agent who has been the case

2   agent throughout and is expected to be a trial witness, he

3   leaves on a long prepaid nonrefundable trip on the 29th, which

4   means that assuming we started the morning of the 28th, I would

5   call him as my first witness, although that had not been the

6   original plan, and then he would not be available after the

7   28th.  But other than that, Your Honor, the government will be

8   ready on that day.

9        THE COURT:  I think it's likely -- two things.  No. 1,

10  as Ms. Christl says, the filing of the 702 motion would toll

11  speedy.  The other thing is that were I to reset this matter on

12  October 28th, there are three other criminal trials set on that

13  day.  And it's logistically the chance of one of them going, I

14  mean, they probably will all go away, but they might not.  It

15  would be -- it would probably be -- I probably would not do

16  that.

17       And then we are kind of right back to where we would

18  be otherwise, just -- and even setting it -- let me see, yeah,

19  I could set it, I can set it for trial on October 21st, but I

20  don't think that would -- it would just be a week continuance.

21  I don't think we would really be able to do what we need to do

22  in terms of the 702 motion.  But, Ms. Christl, if you think

23  otherwise --

24       MS. CHRISTL:  Your Honor, I don't think it probably

25  would give us enough time to litigate that issue.

1          *THE COURT:*  Yeah, I think that that's probably true.

2          Okay.  Then, Ms. Christl, anything more before the

3     Court rules?

4          *MS. CHRISTL:*  If I could just have one moment.  Your

5     Honor.

6          *THE COURT:*  Sure.

7          *MS. CHRISTL:*  I don't have anything else to say.  I

8     will just let the Court know depending on how the Court rules

9     on my 702 motion, we may run into issues if we do call an

10    expert with scheduling them.  At this point I don't have a

11    retained expert.

12         *THE COURT:*  Well, yeah.  You wouldn't -- obviously.  I

13    mean, under the circumstances I would be open to the fact that

14    depending on how the Court ruled, if the Court ruled that the

15    expert could testify, I would probably be open to the idea that

16    you may need to have a continuance in order to retain your own

17    expert.  I mean, this is -- you know, you are being put in a

18    somewhat difficult situation by the government's late

19    disclosure.

20         *MS. CHRISTL:*  Yes, Your Honor.

21         *THE COURT:*  Okay.  So the matter before the Court is

22    the government's motion to reconsider the Court's order and to

23    grant an ends of justice trial continuance.  This is Docket

24    No. 45.

25         As I indicated just a little bit ago, I think that the

1    nature of the government's error does not weigh so heavily that

2    the expert should be excluded.  When all the different factors

3    are weighed together, especially given the fact that there

4    appears to be very minimal, if any, prejudice to Mr. Heller

5    from a continuance, also given the nature of this particular

6    expert, I do think that the prejudice to the government from

7    the exclusion or the inability of the government to call the

8    expert based simply upon missing the disclosure deadline would

9    constitute great prejudice to the United States because it

10   appears at least that there could be a defense that's based

11   upon the nature of the relationship that Mr. Heller had with

12   the victim and whether it was ongoing, whether that

13   relationship was ongoing after the alleged incident and things

14   of that nature.

15        Those are things which, especially when you are

16   talking about the behavior of a juvenile, are subjects that

17   may -- as I said before, a jury wouldn't necessarily understand

18   those things.  And, in fact, it's even possible that what the

19   expert may testify to may be counterintuitive.  And for that

20   reason the importance of the testimony, at least to the

21   government's case, could be especially large.

22        So I believe that a continuation of the trial date is

23   appropriate under *United States v. West*.  I am not going to

24   exclude time because Ms. Christl indicates that she is able to

25   file a motion and I will reset -- I will set a deadline of next

1    Friday for Ms. Christl to file her 702 motion which she

2    indicates she is going to set.  If for some reason Mr. Heller

3    decides against filing a 702 motion, then I am going to

4    consider speedy trial still tolled because I am not going to

5    rule on that portion of the government's motion that requests

6    that the Speedy Trial Act -- or the time be excluded from the

7    Speedy Trial Act.

8           Do you think you can -- I don't want to prejudice your

9    ability to put together a good 702 motion, Ms. Christl, because

10   when we were talking about fitting the trial in in a very short

11   amount of time, I don't want to jam you up.

12          MS. CHRISTL:  I actually just realized too as the

13   Court was ruling that I am out of town next Thursday and

14   Friday.

15          THE COURT:  When do you think you would be in a

16   position to file one reasonably?

17          MS. CHRISTL:  I think -- I certainly don't want -- I

18   would like this case to go to trial on October 28th if

19   possible, so I don't want really to delay it, but I think if I

20   could have until October 8th --

21          THE COURT:  October 8th?

22          MS. CHRISTL:  -- to file it.  Would that be

23   acceptable?  I am sorry, yeah, October 8th.

24          THE COURT:  Okay.  And then how long would the

25   government need to respond to a 702 motion?

1          *MS. DAVIES:*  One week, please, Your Honor.

2          *THE COURT:*  All right.  Government's response, then,

3     due by October 15.

4          So here is what the Court will do, and that is I am

5     going to grant that portion of the government's motion to

6     reconsider.  I will continue the trial until October 28th.

7     Whether it goes on that date is going to depend upon other

8     cases going away because -- and they might, like I said, but on

9     the other hand, I'm not sure.

10          So there is at least a possibility that we'll have to

11     continue the case and take up that portion of the government's

12     motion that requests an exclusion of time.  Perhaps speedy

13     trial will still be tolled.  We'll have to see.  Nor am I going

14     to set a hearing date on the motion, although it's possible

15     that we may be able to fit it in on Friday, October 25th, but

16     there is just little bits of pieces of time available then.

17     Instead, there is at least a better chance that something will

18     go away and there may be a bigger gap to set it.  But why

19     don't -- why don't you reserve bright and early 8:00 a.m. on

20     October 25th.  Does that work for you, Ms. Christl?

21          *MS. CHRISTL:*  Yes, Your Honor.

22          *THE COURT:*  Ms. Davies, Ms. Surratt?

23          *MS. DAVIES:*  Assuming that the expert needs to be

24     present, I do need to confer with her as to her schedule.  She

25     travels nationally to do services for the FBI, but the

1    government is available then and I will find that out.  How

2    would the Court like me to handle that if I find out that she

3    is unavailable on the 25th?

4         THE COURT:  Notify the Court accordingly.  And if we

5    have to have a full-blown 702 motion and testimony, which I am

6    not sure we do, but potentially, I only have an hour then.  We

7    have a sentence for a person who we will probably need to go

8    further with it, but it may have to take place over the course

9    of that day.  For instance, maybe the McGowan hearing at

10   1:30 would go away based upon the fact he is still being

11   transported for purposes of psychological testing and we might

12   have an hour there, so we will try the best that we can.

13        All right.  Anything more that we should take up at

14   this time, Ms. Christl?

15        MS. CHRISTL:  Your Honor, just so I am clear, we do

16   plan to file a response to the government's 404(b) notice.  Is

17   there a date that the Court would like that filed and would you

18   anticipate us also taking that up on the --

19        THE COURT:  I don't think that the -- that my orders

20   do set the response date for that, but can you have that --

21   when could you be in a position to file that, knowing that

22   Ms. Stricklin is just dying to respond.

23        MS. CHRISTL:  Your Honor, could we have until -- that

24   one I don't anticipate since we are responding to something the

25   government has filed.  I don't know that they would need extra

1    time, so could we have until October 15th to file that or would

2    you prefer it sooner?

3         THE COURT:  Yeah, that might be a little bit

4    problematic because depending on -- it may trigger the need for

5    the government to respond with some more information.  Do you

6    think you could do it by the 8th as well?

7         MS. CHRISTL:  Yes, Your Honor.

8         THE COURT:  So we will have the same deadlines as the

9    other -- as the 702 motion for that.

10        MS. CHRISTL:  And, Your Honor, I can also notify the

11   Court and the government that I do plan on filing a motion

12   under Rule 412, which in the rule says to file 14 days before

13   trial, so I also anticipate that that would need to be

14   addressed probably on the 25th as well.

15        THE COURT:  What's 412?

16        MS. CHRISTL:  It's rape shield.  I don't think it's

17   anything anyone -- it's information that's contained in the

18   discovery, but out of an abundance of caution, if the Court

19   deems that is sexual conduct, I plan to file that motion.

20        THE COURT:  Yeah, so any such motion should be filed

21   within the time set forth on the statute or -- all right?

22        Ms. Davies, anything else on behalf of the United

23   States?

24        MS. DAVIES:  Your Honor, in light of the fact we may

25   be going to trial on the 28th, should we be scheduling a trial

1   prep conference?

2        *THE COURT:*  That is going to take place on the 25th

3   too, assuming the trial goes.

4        *MS. DAVIES:*  Okay.

5        *THE COURT:*  Which is when they normally take place,

6   the Friday before.

7        All right.  Then Mr. Heller's bond will be continued

8   and the Court will be in recess.  Thank you.

9       (Recess at 11:05 a.m.)

10                    REPORTER'S CERTIFICATE

11      I certify that the foregoing is a correct transcript from

12   the record of proceedings in the above-entitled matter.  Dated

13   at Denver, Colorado, this 27th of January, 2020.

14

15                            S/Janet M. Coppock

16

17

18

19

20

21

22

23

24

25