IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 19-cr-00224-PAB

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DAKOTA HELLER,

        Defendant.

**MOTION IN LIMINE:
OBJECTION TO USE OF PSEUDONYM FOR ALLEGED VICTIM DURING TRIAL**

Defendant Dakota Heller ("Mr. Heller"), through undersigned counsel, respectfully moves the Court to rescind paragraph (1) of the protective order (ECF 22) requiring use of a pseudonym for the alleged victim in this case during trial. As grounds, Mr. Heller states:

**FACTUAL AND PROCEDURAL BACKGROUND**

Over four years ago, Mr. Heller touched Christopher's[1] penis on an airplane. At that time, Mr. Heller was 35 years old and Christopher was 16 years old. The government argues Mr. Heller either (1) knew Christopher did not consent to this touching or (2) knew Christopher was incapable of appraising the nature of the conduct, declining to participate, and communicating his lack of consent. ECF 143. Mr. Heller denies these allegations. After a mistrial and multiple continuances, Mr. Heller's trial is scheduled to begin July 26, 2021. At that time, Christopher will be 21 years old.

---

[1] "Christopher" is the pseudonym required by the protection order at issue in this motion.

1

On June 4, 2019, the government requested a protective order requiring, among other rules, use of a pseudonym for the alleged victim during court proceedings, including trial. ECF 18. Because Christopher was 19 years old at that time, the government acknowledged he was "no longer entitled to the privacy protections of 18 U.S.C. §3509," but argued that "similar policy concerns apply and warrant affording the alleged victim in this case the types of protections afforded to minors." ECF 18 at 2. When the government filed this request, trial was scheduled to begin on July 15, 2019. ECF 17. Mr. Heller did not oppose the government's motion. The Court granted the government's motion and issued the protective order on June 18, 2019. ECF 22.

On October 28 and 29, 2019, Christopher testified during Mr. Heller's first trial. The courtroom was not closed, the record was not sealed, and access to Christopher's testimony was not restricted. Christopher was 19 years old at that time, subject to in-person cross-examination, and, with the exception of the pseudonym, treated just as any other witness. That trial ended in a mistrial when the jury was unable to reach a unanimous verdict.

The events at issue in this case have been disclosed to Christopher's parents, girlfriend,[2] and members of his extended family and church community.

## LEGAL AUTHORITY AND ARGUMENT

### I. The Government Has Not Established That Use of Christopher's Actual Name During Trial Will Cause Adverse Consequences to Him.

There is no legal authority mandating the use of a pseudonym at trial under these circumstances. The only potential statutory basis to continue using a pseudonym to refer to the alleged victim in this case would be 18 U.S.C. §3771(a)(8), which guarantees an alleged

---

[2] Undersigned counsel does not know the current status of this relationship. The last information produced in discovery indicated the relationship was active as of February 24, 2020.

2

crime victim "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. §3771(a)(8). However, using Christopher's actual name during trial will not violate that right. He will be 21 years old and four years removed from the alleged crimes, which have already been disclosed to many of his family members and friends. He has previously testified publicly about these events. The case has garnered no media attention of which counsel is aware. There is no reason to believe use of Christopher's actual name during trial would cause him injury or harassment. The government has presented no evidence establishing that use of Christopher's real name will adversely affect him.

The few reported cases permitting anonymity for prosecution witnesses in criminal cases have done so to either (a) protect the witness from injury or harassment, or (b) protect testifying children pursuant to statute. *See, e.g., United States v. Ramos-Cruz*, 667 F.3d 487 (4th Cir. 2012) (affirming use of pseudonyms for El Salvadoran police officers called to testify against MS-13 members after a finding that use of their true identities would pose an actual danger to the witnesses and their families); *United States v. Celis*, 608 F.3d 818 (D.C. Cir. 2010) (affirming use of pseudonyms for Columbian government witnesses in light of evidence that the FARC, with which defendants were associated, threatened to kill cooperating witnesses and routinely used violence against its enemies); 18 U.S.C. §3509(d)(3) (authorizing court to issue an order protecting a child from public disclosure of the child's name during proceedings if the court finds a significant possibility that such disclosure would be detrimental to the child). Neither circumstance is present here. Counsel is aware of no published authority permitting use of a pseudonym for an adult prosecution witness before a jury based solely on the fact that the witness was 16 years old at the time of the events s/he describes and that those events were of a sexual nature.

3

To be sure, other Federal District Courts have allowed narrow identification protections for alleged victims of sex crimes who were minors at the time of the alleged crime, but over 18 at the time of testimony. *See, e.g., United States v. Gardner*, 2016 WL 5404207 (E. D. Mich. 2016); *United States v. Thompson*, 178 F.Supp.3d 86 (W.D. N.Y. 2016); *United States v. Kelly*, 2008 WL 5068820 (E.D. N.Y. 2008); *United States v. Paris*, 2007 WL 1484974 (D. Conn. 2007). However, these cases show that such protections generally require findings that use of the witness's real name will cause "likely adverse personal, professional and psychological consequences" to the witness. *Gardner* at *4 (*quoting Thompson* at *7 and *Paris* at *2). In the examples cited above, the government witnesses were former prostitutes and the courts found that "publicly linking their identities to their past lives as sex workers" would likely create "legitimate and substantial" adverse consequences for them. *Paris* at *2. This case does not raise such concerns.

One district court held an alleged victim's identity may be hidden from public disclosure in a criminal case when the "right to access is outweighed by the interests favoring non-disclosure." *United States v. Robinson*, 2009 WL 137319 at *3 (D. Mass. 2009) (internal quotations omitted). According to that Court, "[a]mong the countervailing factors favoring nondisclosure are: (i) prejudicial pretrial publicity; (ii) the danger of impairing law enforcement or judicial efficiency; and (iii) the privacy interests of third parties." *Id*.

In *Robinson*, the defendant was accused of attempting to extort a man by threatening to disclose their sexual relationship unless he paid her to remain quiet. The Court denied a media outlet's motion to disclose the alleged victim's identity because such disclosure would "inflict the very harm this prosecution seeks to punish, and, at least arguably, discourage

4

similarly situated victims from cooperating with law enforcement." No similar concerns exist here. Through this prosecution, the government seeks to punish, not prevent, an alleged injury.

## II. Use of a Pseudonym During Trial Will Prejudice Mr. Heller's Defense and Violate His Constitutional Rights to Due Process, Confrontation, Effective Assistance of Counsel, an Impartial Jury, and a Fair Trial.

On the other hand, continued use of the pseudonym will prejudice Mr. Heller. Throughout this case, the government, through its witnesses and argument, has referred to the charged conduct as child molestation.[3] However, 16 years old is the age of consent and Mr. Heller's defense is that he believed Christopher consented to the touching. By presenting Christopher as a child who was "molested," the government will evoke within the jurors deep, unfair animus toward Mr. Heller. Similarly, using a first name pseudonym for the alleged victim, while Mr. Heller and all other witnesses will be referred to as "Mr." or "Ms.", suggests that Christopher is too young or childish for a formal prefix.

Use of the pseudonym perpetuates the government's false narrative that Mr. Heller committed an act of child molestation, communicates that Christopher requires special treatment, and implies that jurors should be more generous when assessing Christopher's credibility as compared to other adult witnesses. It could also create confusion regarding whether Christopher was legally capable of consenting to the sexual contact, further prejudicing Mr. Heller's defense. Even if the jurors understand Christopher could legally consent, use of the pseudonym will create an unfair and unwarranted bias in favor of the

---

[3] *See, e.g.,* ECF 125, Tr. (10/28/19) at 63 (Christopher's direct examination testimony, "…he molested me…"); ECF 126, Tr. (10/29/19) at 304 (G. Kinzley's direct examination testimony, "[Christopher] told me on the flight coming back from Dubai that Dakota had molested him."); ECF 127, Tr. (10/30/19) at 557 (Government closing argument, "Ms. Quesada…did not know that a year earlier the defendant had molested Christopher on that airplane.").

5

alleged victim, who requires special protection and anonymity, and against Mr. Heller, who doesn't.

Further, defense counsel's use of the pseudonym will communicate an even more damaging idea to the jury: that Mr. Heller's own lawyers see the alleged victim as deserving of special treatment and protection. This is not only untrue, it undercuts the defense narrative that Mr. Heller reasonably believed Christopher consented to the sexual contact. Rigorous cross-examination may send one message (that Mr. Heller's lawyers believe in his innocence), but defense counsel's use of the pseudonym will send the opposite message. Such a cross-examination would fall short of the confrontation and effective representation guaranteed to Mr. Heller by the Fifth and Sixth Amendments.

**III.   Use of a Pseudonym During Jury Selection Will Prevent Prospective Jurors From Determining Whether They Know the Alleged Victim Until After They are Sworn.**

Christopher will testify in person. This will be the first time the jury will see him. A juror who is acquainted with Christopher will have no way of knowing that important, likely disqualifying, fact until the moment he takes the stand. This event would require, at best, an interruption, at worst, a mistrial. Identifying Christopher by his actual name during jury selection would eliminate this possibility.

**IV.   Use of a Pseudonym During Trial Implicates the Common-Law and First Amendment Right of Access to Criminal Trials.**

In addition, the Court must consider the common-law and First Amendment interests in public court proceedings. *See Doe v. Megless*, 654 F.3d 404, 408 (3rd Cir. 2011) (in the civil context, "use of a pseudonym runs afoul of the public's common law right of access to judicial proceedings.") (citations omitted). The presumption of openness and public disclosure applies equally in criminal actions. *See, e.g., Press-Enterprise Co. v. Superior Court of*

*California, Riverside County*, 464 U.S. 501, 508 (1984) ("Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.").

"While the public interest in access to the full information about witnesses' identities is less significant than the public interest in being present during criminal proceedings, access to this information still implicates the right to participate in informed 'discussion of governmental affairs' and is thus also protected by the First Amendment." *Paris* at *1 (*quoting Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604 (1982) (invalidating on First Amendment grounds rule requiring courts to be closed during testimony of underage sexual assault victims)).

Even if the defendant does not oppose a prosecutor's pseudonym request, and even if the court does not anticipate media attention, the Court should still "consider that the 'press and general public have a constitutional right of access to criminal trials.'" *Thompson* at 96 (*quoting Globe Newspaper*, 457 U.S. at 603)). "This right, however, 'is not absolute' and may be curtailed in 'limited circumstances' when the Government puts forth a 'weighty' justification." *Id*. (*quoting Globe Newspaper*, 457 U.S. at 606). "Specifically, the Government must demonstrate that 'the denial [of public access] is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.'" *Id*. (*quoting Globe Newspaper*, 457 U.S. at 607) (bracketing original in *Thompson*). The government has not done so here.

## CONCLUSION

Changed circumstances warrant reconsideration of the pseudonym requirement in this case. The unusually long passage of time between the initial trial setting and the expected trial

7

date has changed the analysis regarding use of a pseudonym for the now 21-year-old alleged victim. Mr. Heller objects to the protective order's pseudonym provision.

The government has not shown that use of Christopher's real name during trial will adversely affect him. On the other hand, use of the pseudonym will support the government's unfair narrative that Mr. Heller "molested" Christopher, undercut the theory of defense, and create an emotional bias in favor of the government. Inviting these highly charged emotional responses in the minds of jurors invites an unfair trial. Mr. Heller respectfully moves the Court to rescind the pseudonym requirement of the protective order.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


*s/ David Kraut*                              *s/ Kelly Christl*
DAVID KRAUT                                   KELLY CHRISTL
Assistant Federal Public Defender             Assistant Federal Public Defender
633 17th Street, Suite 1000                   633 17th Street, Suite 1000
Denver, CO  80202                             Denver, CO  80202
Telephone:  (303) 294-7002                    Telephone:  (303) 294-7002
FAX:  (303) 294-1192                          FAX:  (303) 294-1192
Email:  david_krautl@fd.org                   Email:  kelly_christl@fd.org
Attorney for Defendant                        Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2021, I electronically filed the foregoing **MOTION IN LIMINE: OBJECTION TO USE OF PSEUDONYM FOR ALLEGED VICTIM DURING TRIAL** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

    Patricia W. Davies, Assistant United States Attorney
    Email: patricia.davies@usdoj.gov

    Andrea L. Surratt, Assistant United States Attorney
    Email: andrea.surratt@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

    Dakota Michael Heller    (via Mail)

    *s/David Kraut*
    DAVID KRAUT
    Assistant Federal Public Defender
    633 17th Street, Suite 1000
    Denver, CO  80202
    Telephone:  (303) 294-7002
    FAX:  (303) 294-1192
    Email: david_krautl@fd.org
    Attorney for Defendant