IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 19-cr-00224-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.  DAKOTA MICHAEL HELLER,

    Defendant.

---

**GOVERNMENT'S RESPONSE TO MOTION IN LIMINE - OBJECTION TO USING VICTIM PSEUDONYM DURING TRIAL (ECF # 216)**

---

The United States of America, by and through undersigned counsel, responds to the defendant's Motion in Limine – Objection to Using Victim Pseudonym During Trial ("Motion"). (ECF # 216). For the reasons below, defendant's Motion, properly viewed as a motion for reconsideration of this Court's Protective Order (ECF # 18) and prior denial of the defendant's oral motion on this issue[1] is unsupported by the facts of this case or law, and should be denied.

    **I.**    **FACTUAL AND PROCEDURAL BACKGROUND**

Defendant Dakota Heller is scheduled for trial on July 26, 2021. He is charged with violating 18 U.S.C. §§ 2244(b) and 2244(a)(2), unlawful sexual contact without consent and unlawful sexual contact with an incapacitated victim, in Counts 1 and 2,

---

[1] At the Final Pretrial Conference on February 28, 2020, defendant orally moved to eliminate the use of the pseudonym "Christopher" during the trial scheduled to begin on March 2, 2020. The Court denied defendant's oral motion. (ECF # 189).

1

respectively.  (ECF # 143).  Both charges stem from defendant's actions on April 3, 2017, during an international flight from Dubai to Seattle.  The evidence at trial will show that Heller switched airline seats before takeoff and was then seated immediately next to 16-year-old Christopher.  Heller then gave Ambien to Christopher, and after Christopher was sleepy, groggy and disoriented, Heller reached below a blanket spread over Christopher's lap, unbuttoned Christopher's shorts, and rubbed Christopher's penis to ejaculation.  At trial, Christopher will testify that Heller's rubbing his penis on that flight was the first time another person touched Christopher's penis sexually.  Christopher will also testify that Heller implored Christopher not to disclose what Heller had done to him, both shortly afterwards at the Seattle airport and following the mission trip's return to Colorado.  Christopher then delayed disclosing Heller's sexual assault until late 2018.  The investigation leading to this prosecution followed Christopher's disclosure.

A grand jury indicted Heller in May 2019.  (ECF # 1).  On June 4, 2019, the United States filed its unopposed Motion for Protective Order, requesting, *inter alia*, careful handling of materials that disclosed Christopher's full name, and pertinent to this Motion, the use of a pseudonym at trial to protect the victim's identity.  That initial Motion for Protective Order was filed after consultation with the victim and his family, and was based on the government's recognition that the victim's eventual trial testimony would involve extremely personal and painful descriptions of being sexually assaulted by a trusted former volunteer in the church's youth ministry on an international flight.  The government consulted with the defense before filing its motion

2

and defendant agreed it could be filed unopposed. (ECF # 18). On June 5, 2019, this Court ordered the defendant to file any position regarding the Motion for Protective Order by June 12, 2019. (ECF # 19). No position was filed by the defendant.

Trial in *Heller I* was conducted from October 28, 2019 through October 31, 2019. (ECF #s 105-108). Christopher testified under the pseudonym, recounting for the jury the private and painful details of being sexually assaulted by Heller. Any observer of the *Heller I* trial could fairly conclude that the subject of his testimony was difficult, embarrassing, and painful for the reserved and private Christopher. Nothing in the record from the *Heller I* trial—or from discussions with 11 of the jurors after the court declared a mistrial—suggests that the jury was confused or influenced by the use of the pseudonym. On November 1, 2019, this Court declared a mistrial in *Heller I* when the jury advised that it was unable to reach a verdict. (ECF # 110).[2]

Following the mistrial in *Heller I*, the government gave notice of its intent to re-try this case (ECF # 115), and retrial was later scheduled for March 2, 2020. At the Final Trial Preparation on February 28, 2020, this Court denied "defendant's oral motion to preclude use of the pseudonym Christopher." (ECF # 189). Thereafter, shortly after jury selection, defendant requested, the government opposed, and this Court granted a further continuance of trial based on the unavailability of a defense witness and the worsening health situation posed by the COVID-19 pandemic. (ECF # 192).

---

[2] After *Heller I*, the government moved to redact from the trial transcript the few instances when witnesses inadvertently used the victim's actual name rather than "Christopher." This Court ordered the redactions. (ECF ## 121-122).

Between March 2020 and February 2021, this Court has granted further continuances, mostly at the request of the defendant. (ECF nos. 197, 200, 201, 202, 203, 210, 211, 212, 213, 214, 215). The undersigned counsel, albeit reluctantly, agreed to some of those continuances. These circumstances have resulted in the trial now scheduled for July 26, 2021.

Defendant's instant Motion is properly viewed as a motion for reconsideration, the standard for which defendant has failed to satisfy. Indeed, other courts facing this issue have consistently ruled that a victim who was a minor at the time of a sexual-related crime but who has since attained adulthood is nonetheless properly afforded narrow identification protections. *See, e.g., United States v. Weber*, 2020 WL 5531562, at *2 (D. S.D. Sept. 15, 2020) (slip op.) (citations omitted) Further, defendant's various claims of harm to his defense lack merit as there were no indications of juror confusion or prejudice to the defendant from the use of the pseudonym in *Heller I*. Nonetheless, if this Court concludes that some remedy is needed, a cautionary instruction to the jury rather than removing the victim's identification protection would be more appropriate.

## II.   ARGUMENT

### A. The Motion Fails to Satisfy the Standard for Reconsideration

Under Tenth Circuit law, "[m]otions to reconsider are proper in criminal cases" if there is "(1) an intervening change in the controlling law, (2) new evidence previously unavailable," and/or "(3) the need to correct clear error or prevent manifest injustice.'"

*United States v. Christy,* 739 F.3d 534, 539 (10th Cir. 2014) (internal quotation marks omitted).

Defendant's Motion offers no legal analysis or authority for why reconsideration is warranted under any of these grounds, instead making a passing reference without analysis regarding the passage of time since defendant's alleged assault and the upcoming trial. (ECF # 216). That there have been delays in completing the retrial is neither legally an adequate basis for reconsideration nor factually persuasive when most of the delays in this case result from defense requests. *See* ECF ## 197, 200, 201, 202, 203, 210, 211, 212, 213, 214, 215.

### B. This Court Properly Maintains the "Narrow Identification Protection" of the Christopher Pseudonym to Lessen The Harms to the Victim

"Crime victims are entitled 'to be treated with fairness and with respect for the victim's dignity and privacy.' 18 U.S.C. § 3771(a)(8). Child victims of alleged crimes of 'physical abuse, sexual abuse, or exploitation,' are entitled to have their identity protected. 18 U.S.C. §§ 3509(a)(2)(A) & 3509(d)(3)." *Weber*, 2020 WL5531562 at *2. As the *Weber* court noted, "[t]he protection of [a minor's] privacy will mean little if the cloak protecting that privacy disappears simply upon reaching the age of majority." *Id*. (citations omitted) (alterations by *Weber* court; internal quotation marks omitted).[3]

In *United States v. Gardner,* 2016 WL 5404207 (E.D. Mich. Sept. 28, 2016)

---

[3] *Weber* involved a sex trafficking prosecution with minor victims. By the time of trial, several of the victims had reached adulthood. Post-trial, the government moved for redactions of the witnesses' names, arguing that because they were minors at the time of the offenses, protecting their identities even though they had reached adulthood was appropriate. In granting the redactions, the *Weber* court surveyed the decisions of multiple courts faced with this issue and concluded that "[i]t makes little sense to protect an alleged minor victim by using initials and then discontinue that protection once the alleged victim becomes an adult." *Id.*

5

(unpublished), the defendant was charged with sex trafficking offenses involving a victim who was a minor at the time of the offense but an adult by the time of trial. The government sought a protective order to allow the victim to testify without revealing her actual name. The defendant objected, claiming that: (1) the government had failed to show that the victim needed the protection due to harassment or emotional instability; (2) hiding the victim/witness's identity would "add veracity to her claim against Defendant"; and (3) because the victim was then 18, she no longer qualified for protections. *Id.* at *3. The court rejected defendant's claims and allowed the (then adult) victim to testify without using her full name. In so doing, the court noted that the identity protection was appropriate to prevent possible future harassment, and that "not one of the cases that have granted identification limitations has found that emotional instability is a prerequisite to qualify for such privacy protections." *Id*. at *4. Instead, *Gardner* noted that "[c]ourts have also found 'a compelling interest in encouraging crime victims to testify by protecting them from the adverse consequences of testifying.'" *Id*. (citation omitted). *See also United States v. Lewis*, 2017 WL 750456, at *5 (S.D. Ga. Feb. 27, 2017) (unpublished) (citations omitted) ("[T]he privacy of the alleged victims is a compelling interest when considering the desire to protect these individuals 'from embarrassment, in order to avoid psychological harm and allow the minor witnesses to effectively testify.' Moreover, the alleged victims who will testify as witnesses are likely to testify as to sexually explicit content and information that, if publicly disclosed, could cause unnecessary embarrassment and harassment.")

As to the *Gardner* defendant's claim that hiding the victim's identity would lend veracity to her testimony and hinder the defense, the court noted that any potential prejudice "may be remedied by an instruction to the jury prior to deliberations." 2016 WL 5404207, at *5. *See also United States v. Paris*, 2007 WL 1484974, at *2 n.4 (D. Conn. May 18, 2007) (unpublished) (finding that any potential prejudice to defendant from a witness testifying with identification protections was adequately addressed by a cautionary instruction reflecting that the partial identification of the witness is not to be viewed as suggesting the guilt of the defendant).

Based on Christopher's age (16) at the time of the charged offenses, and the expected "sexually explicit" and painful nature of his trial testimony, continued use of the pseudonym under the Protective Order safeguards the victim's rights to fairness, dignity and privacy. 18 U.S.C. § 3771(a)(8). Shortly after receiving defendant's Motion, the undersigned counsel inquired as to whether "Christopher" requested the continuing use of the pseudonym. Undersigned counsel proffers that he does. Under the cited authorities and to promote the government's interest in encouraging witnesses to testify, the Protective Order's requirement of pseudonym use is appropriate and should remain.

### C. Defendant's Claims that Use of the Pseudonym Impairs His Defense Lack Legal or Factual Support

The Motion lists multiple harms that defendant claims he will suffer from continued use of the pseudonym but offers neither analysis as to how he has met the reconsideration standard nor any adequate authority supporting his position.

First, defendant complains that Christopher described the defendant's acts as "molestation" in his testimony and as recounted by his uncle, Gabriel Kinzley, when

7

Christopher disclosed the defendant's alleged acts. Cessation of the Christopher pseudonym will not alter how the victim views defendant's alleged sexual assault against him or the fact that he disclosed it as such to Gabriel Kinzley in 2019. Moreover, even if the Court were to discontinue the Christopher pseudonym, the witnesses in the government's case-in-chief are mostly persons who belong to the same church as the victim, and would continue to refer to him by a first name – whether the pseudonym or the victim's actual first name. Thus, defendant's complaint about calling the victim Christopher pertains only to limited statements by counsel and the Court. Any concern regarding those statements may be addressed through a cautionary instruction, if needed. *See Paris*, 2007 WL 1484974, at *2.

Defendant also complains, without authority, that use of the pseudonym will somehow confuse the jury as to whether or not Christopher could consent to the sexual contact. The government anticipates that the Court will again instruct the jury on the age of consent under federal law and other pertinent legal concepts. Defendant provides no basis for believing that the jury will fail to understand or follow such instructions, and nothing from the *Heller I* trial supports his claim. Similarly, defendant next claims that the use of "Christopher" during the trial and by defense counsel somehow bolsters the victim and undercuts the defense efforts. As found in *Gardner*, defendant's concerns in this regard may be addressed by an appropriate cautionary instruction and do not outweigh the importance of the victim's rights.

Defendant next makes the conclusory claim that his Sixth Amendment right of confrontation will be impaired. In *Heller I*, defendant was afforded virtually unfettered

8

cross-examination of the victim, and the Motion provides no clear explanation as to how confrontation rights are impeded for the upcoming trial.  Further, a defendant's right to confront is not unlimited and does not outweigh appropriate protections for victims. *See, e.g.*, *Gardner,* 2016 WL 5404207*,* at *3 (noting that the "Sixth Amendment does not safeguard all avenues of cross-examination") (citations and internal quotation marks omitted).

Defendant further argues that use of "Christopher" will prevent prospective jurors from determining whether they are personally acquainted with the victim before being sworn.  The Court and parties have learned about the victim's background during these proceedings.  From that knowledge base, there appears to be little risk that a prospective juror who does not recognize the names of any of the other government witnesses will be personally acquainted with the victim.  And this risk, if any, can be addressed without stripping the victim of appropriate identification protections.

Finally, defendant claims that use of the pseudonym violates principles of the public's access to courts under common-law and the First Amendment.  However, defendant's cited cases generally involve instances in which courts are considering closing particular proceedings to the public to protect victims' identities.  (ECF # 216, *citing Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501 (1984) (discussing closing the court to the public); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982) (same)).  Courts faced with whether the use of pseudonyms violates First Amendment concerns regarding public access to courts have found that narrow identification protections strike an appropriate balance for victims' rights.  *United*

9

*States v. Thompson*, 178 F. Supp. 3d 86, 96 (W.D.N.Y. 2016) (weighing the competing interests of protecting victims' privacy through testimony without name disclosure against First Amendment interests and finding protective order proper); *Lewis*, 2017 WL 750456, at *5 (same).

### III.  CONCLUSION

For the foregoing reasons, the government respectfully requests that defendant's Motion in Limine (ECF # 216) be denied.

Respectfully submitted,

MATTHEW T. KIRSCH
Acting United States Attorney

By:  */s  Patricia Davies & Andrea Surratt*
Assistant U.S. Attorneys
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
E-mails: Patricia.davies@usdoj.gov
Andrea.surratt@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on this 20th day of July, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this case.

                                              s/ *Amy McDaniel*
                                              Amy McDaniel
                                              Legal Assistant
                                              U.S. Attorney's Office