IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 19-cr-00224-PAB

UNITED STATES OF AMERICA,

       Plaintiff,

v.

DAKOTA HELLER,

       Defendant.

**JOINT MOTION TO ALLOW FULLY VACCINATED PROSPECTIVE JURORS TO REMOVE MASKS DURING VOIR DIRE AND PARTIALLY OPPOSED MOTION TO REQUIRE WITNESSES TO TESTIFY IN PERSON WITHOUT MASKS**

Defendant Dakota Heller ("Mr. Heller"), through undersigned counsel, respectfully moves the Court to (1) allow fully vaccinated prospective jurors to remove their masks during voir dire and (2) require all witnesses to testify in person without a mask. The government joins the first request; it opposes the second request to *require* unvaccinated witnesses to testify maskless, but the government requests unvaccinated witnesses be *allowed* to testify without masks. As grounds, Mr. Heller states:

**BACKGROUND**

On June 2, 2021, this Court adopted revised Jury Trial Protocols for the District of Colorado based on new recommendations from the CDC regarding the COVID-19 pandemic and fully vaccinated persons. Among other things, the Protocols provide, "All potential jurors, whether vaccinated or unvaccinated, must wear masks during the jury selection process" and "will be socially distanced at three feet throughout jury selection." However, "[a]fter the jury has been selected, fully vaccinated jurors . . . [and] witnesses . . . are not

1

required to wear a mask or to socially distance. Unvaccinated persons must wear a mask and observe social distancing." It also provides, "Fully vaccinated witnesses may testify in the courtroom without masks. Unvaccinated witnesses must testify in the courtroom with masks or via video teleconference ("VTC") from another location in the courthouse without a mask."

On June 7, 2021, this Court issued District Court General Order 2021-6, Court Operations During the COVID-19 Pandemic. It recognizes that "the CDC recommends that fully vaccinated persons do not need to wear a mask or socially distance themselves from others, but that unvaccinated persons should continue to wear masks and to socially distance themselves for their own protection and for the protection of other unvaccinated persons." Thus, it generally provides that "non-employee entrants to the courthouses"—which specifically includes "jurors [and] witnesses"—"who are fully vaccinated . . . shall not be required to wear a mask or to socially distance themselves." That is, however, "unless they are jurors involved in the jury selections process, in which case the Jury Trial Protocols apply to them."

According to the government, at least three of their witnesses are unvaccinated, including witnesses with the initials GK, NG, and AW. One government witness, NG, is vaccinated but may wear a mask due to a family health situation. All potential defense witnesses are fully vaccinated and will testify without a mask.

Consistent with the CDC's recommendations and this Court's general rule, Mr. Heller moves this Court to permit fully vaccinated jurors to remove their masks during voir dire. The government joins this request.

2

Additionally, Mr. Heller moves this Court to require all witnesses to testify in person without masks, consistent with Mr. Heller's Sixth Amendment right to confrontation. The government opposes this request, but it requests the Court give unvaccinated witnesses the option of testifying without a mask.

## I. Fully vaccinated potential jurors should not be required to wear masks.

This Court's general rule that only unvaccinated persons need to wear masks is consistent with the CDC's guidance. The lone exception to this rule—that all prospective jurors must be masked—is not only contrary to the CDC's recommendations, it would have a detrimental impact on the jury selection process. Accordingly, the parties jointly request that this Court allow fully vaccinated jurors to remove their masks.

If the jury pool is masked, the parties cannot draw conclusions about the potential jurors when selecting the jury. Observing the full facial expressions of the members of the venire is essential to determining their reactions to the questions posed by the Court or counsel, to the answers of other jurors, and to the defendant himself.

Indeed, the Supreme Court has observed that "both the prosecution and the defense may be required to make fine judgment calls . . . [that] may involve a comparison of responses that differ only in nuanced respects, as well as a sensitive assessment of jurors' demeanor." *Davis v. Ayala*, 576 U.S. 257, 273 (2015). "We have previously recognized that peremptory challenges are often the subjects of instinct, and that race-neutral reasons for peremptory challenges often invoke a juror's demeanor." *Id.* (citations omitted).

It would be difficult, if not impossible, to meaningfully assess the demeanor of a juror whose face is covered by a mask. The parties would be unable to intelligently exercise peremptory challenges, develop challenges for cause, and litigate any potential *Batson* issues. Thus, masking the jury pool would hinder the parties' ability to intelligently select a jury and undermine Mr. Heller's fair trial rights at this critical stage. Accordingly, the parties respectfully request that prospective jurors be permitted to remove their masks during voir dire.

## II.   Witnesses should be required to testify in person without masks.

The Protocols create two options for the presentation of testimony by unvaccinated witnesses (and presumably, vaccinated witness who choose not to unmask for other reasons). First, the witness may testify in court with a mask. Second, the witness may testify without a mask via VTC from another location in the courthouse. There are significant problems with both options, as applied here. Accordingly, this Court should require all witnesses to testify in person without a mask.

First, allowing witnesses to testify with their faces covered by a mask does not comport with the Confrontation Clause, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him"). U.S. Const. amend. IV. "[T]he irreducible literal meaning of the Clause" is the "right to meet face to face all those who appear and give evidence at trial." *Coy v. Iowa*, 487 U.S. 1012, 1020-21 (1988); *accord Crawford v. Washington*, 541 U.S. 36, 46 (2004) ("Our constitution is, that the person shall see his accuser"). The Tenth Circuit likewise recognizes that the "bloodline of this venerated [confrontation] right is long, and reaches into antiquity." *United States v. Kaufman*, 546 F.3d 1242, 1252 (10th Cir. 2008) (discussing the "face-to-face requirement of the Confrontation Clause").

4

"The Clause provides defendants with both the right to face physically the government's witnesses and the right of cross examination." *Id.* at 1253 (internal quotation marks omitted). Masking witnesses will deprive the defendant of his Sixth Amendment confrontation right. The right to not only hear from, but see, the witnesses in the government's case, is constitutionally guaranteed.

Moreover, for similar reasons discussed above, masking witnesses will hinder the jury's ability to "[d]etermin[e] the weight and credibility of witness testimony," a "fundamental premise of our criminal trial system." *United States v. Scheffer*, 523 U.S. 303, 313 (1998). The jury cannot be expected to perform this essential function if they are unable to see the faces of the witnesses. That function is particularly important in this case, which turns on in-court credibility assessments. The central issues are whether the government will prove beyond a reasonable doubt that at the time of the sexual contact, Mr. Heller knew Christopher (1) did not consent to the sexual contact and/or (2) was so incapacitated that he was incapable of consenting to such contact. The jury must evaluate Mr. Heller's state of mind based on lay witness memory and expert opinions.

The lay witness credibility assessments will be challenging due to the sensitive nature of the charges, the potential tension between witnesses' religious beliefs and homosexuality, and the close personal relationships these witnesses had with Mr. Heller and still have with Christopher. Over the years he belonged to their church, Mr. Heller confided in several clergy members who are now government witnesses. These same people are Christopher's relatives and friends. The Court and parties gained valuable insight into these challenges, when, following the first trial, several jurors described the importance of GK's facial expressions in evaluating his credibility. The jury would be wholly deprived of this opportunity to assess credibility if witnesses are masked.

Using VTC for witness testimony is not a viable alternative. While VTC is now being used regularly in our judicial district for some criminal proceedings, no mechanism exists for courts to

authorize felony criminal trials to be conducted by video conference. The VTC option contemplated by the Protocols would essentially permit key components of a criminal trial to occur outside the physical presence of the defendant. This process would not comport with federal law. *See* Fed. R. Crim. P. 43(a)(2) (mandating defendant's presence at "every trial stage").

Moreover, the VTC option raises Sixth Amendment concerns. Presenting live trial testimony in court—and not over a video screen—is critical to the purpose animating the Confrontation Clause. *See, e.g.*, *Maryland v. Craig*, 497 U.S. 836, 847 (1990) ("We have . . . noted the strong symbolic purpose served by requiring adverse witnesses at trial to testify in the accused's presence."); *see generally* Jessica Arden Ettinger et. al., *Ain't Nothing Like the Real Thing: Will Coronavirus Infect the Confrontation Clause?*, 44 Champion 56 (May 2020) ("In-person confrontation is not just a historical artifact: it is necessary to advance the search for truth that underpins the legitimacy of the courts. Even in the era of COVID-19, public health must be promoted in a way that does not sicken the criminal justice system."). Indeed, "a witness may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts." *Coy v. Iowa*, 487 U.S. 1012, 1019 (citation omitted). "It is always more difficult to tell a lie about a person to his face than behind his back." *Id*. at 1018 (citation omitted). As Justice Scalia poignantly explained: "Virtual confrontation might be sufficient to protect virtual constitutional rights; I doubt whether it is sufficient to protect real ones." Order of the Supreme Court, 207 F.R.D. 89, 94 (2002) (Scalia, J.) (statement explaining rejection of proposed amendment to Federal Rules of Criminal Procedure that would have allowed testimony by two-way video instead of live trial testimony upon certain findings). The VTC option also would adversely affect the defense function, as there is concern as to how effectively a lawyer can cross examine a witness through VTC. The American College of Trial Lawyers has flagged this

6

very issue in considering the impact of COVID-19 mitigation measures on constitutional rights. "The Supreme Court has called cross-examination the 'greatest legal engine ever invented for the discovery of the truth.' Will that hold true if done remotely by video?" American College of Trial Lawyers, *Constitutional Protections Implicated by the Reopening of Criminal Courts in the Face of the COVID-19 Pandemic, Interim Guidelines*, at 21, July 29, 2020 ("ACTL Interim Guidelines") (quoting *California v. Green*, 399 U.S. 149, 158 (1970)).

Finally, the VTC procedure will likewise impact the ability of the jurors to assess credibility, which as discussed above is particularly important in this case. "A jury's ability to judge the credibility of witnesses is a 'fundamental premise of our criminal trial system' and involves in part the jury's ability to observe the witness's demeanor on the stand.' Is it enough for the jury to see the witness only on a screen?" *Id.* at 21 (citing *United States v. Scheffer*, 523 U.S. 303, 313 (1998) and *California v. Green*, 399 U.S. at 158). It is well documented that "[p]utting a trial in a virtual setting compromises nonverbal communication, which has been shown to play an important role in how one's spoken statements are received." Dubin Research & Consulting, *COVID-19's Next Victim? The Rights of the Accused*, 44-May Champion 22, 31 (2020) ("DRC Report") at 31. NACDL's Statement of Principles and Report emphasizes that "[v]irtual mechanisms do not just undermine accused persons' rights…but they also threaten to fundamentally alter the psychology of jurors." NACDL Report at 49. A legitimate trial outcome depends on jurors who are able to fully assess the facts. "When the liberty, and potentially the life, of the defendant are on the line, it is of the utmost importance that the trial court instill in the jury an understanding of the human consequences of their verdict. There is no substitute for the human interaction which takes place in the courtroom." DRC Report at 31.

7

Accordingly, witnesses should be required to testify in open court without face coverings.

## CONCLUSION

This Court should grant the parties' joint request to allow fully vaccinated jurors to remove masks during voir dire. Additionally, this Court should require that all witnesses testify in person without masks.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender

| | |
|---|---|
| *s/ David Kraut* | *s/ Kelly Christl* |
| DAVID KRAUT | KELLY CHRISTL |
| Assistant Federal Public Defender | Assistant Federal Public Defender |
| 633 17th Street, Suite 1000 | 633 17th Street, Suite 1000 |
| Denver, CO 80202 | Denver, CO 80202 |
| Telephone: (303) 294-7002 | Telephone: (303) 294-7002 |
| FAX: (303) 294-1192 | FAX: (303) 294-1192 |
| Email: david_krautl@fd.org | Email: kelly_christl@fd.org |
| Attorney for Defendant | Attorney for Defendant |

# CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2021, I electronically filed the foregoing **JOINT MOTION TO ALLOW FULLY VACCINATED PROSPECTIVE JURORS TO REMOVE MASKS DURING VOIR DIRE AND PARTIALLY OPPOSED MOTION TO REQUIRE WITNESSES TO TESTIFY IN PERSON WITHOUT MASKS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

    Patricia W. Davies, Assistant United States Attorney
    Email: patricia.davies@usdoj.gov

    Andrea L. Surratt, Assistant United States Attorney
    Email: andrea.surratt@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

    Dakota Michael Heller    (via Mail)

    s/Kelly Christl
    KELLY CHRISTL
    Assistant Federal Public Defender
    633 17th Street, Suite 1000
    Denver, CO  80202
    Telephone:  (303) 294-7002
    FAX:  (303) 294-1192
    kelly.christl@fd.org
    Attorney for Defendant