IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 19-cr-000224-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    DAKOTA MICHAEL HELLER,

    Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Patricia Davies and Andrea Surratt, Assistant United States Attorneys for the District of Colorado, and the defendant, Dakota Michael Heller, personally and by counsel, Kelly Christl and David Kraut, Assistant Federal Public Defenders, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

### I.   AGREEMENT

**A. Defendant's Plea of Guilty:**

The defendant agrees

(1)    to waive indictment and plead guilty to an Information charging a violation of 18 U.S.C. § 113(a)(5) (Simple assault within aircraft jurisdiction) and 21 U.S.C. §§ 841(a)(1) & (b)(2) (Possession with intent to distribute Schedule IV controlled substance) and

(2)    to waive certain appellate and collateral attack rights, as explained in detail below.

COURT EXHIBIT 1

### B.    Government's Obligations:

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(C). The parties agree that a five year sentence of probation should be imposed to include the applicable mandatory conditions listed at 18 U.S.C. § 3563(a), as well as conditions requiring Mr. Heller to successfully complete a program of sex offender treatment and comply with the accompanying special conditions under the supervision of the U.S. Probation Office.[1] The parties further agree that no period of imprisonment should be imposed as a condition of probation. The parties understand that, once the Court accepts the plea agreement, the Court is required to enter the above-described sentence but will have discretion to impose further probation conditions pursuant to 18 U.S.C. §3563(b). The parties further understand that, if the Court enters a sentence other than the sentence described above, either party has the right to withdraw from the plea agreement.

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a).

### C. Defendant's Waiver of Appeal:

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, Mr. Heller knowingly and voluntarily waives the right to appeal any matter in connection with this

---

[1] The parties' agreement that the defendant should be required to complete sex offender treatment is not intended to limit the imposition of any additional standard and special conditions that the Court and United States Probation Office deem appropriate for the defendant's supervision during Probation.

prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

> (1) the sentence exceeds the maximum penalty provided in the statutes of conviction, 18 U.S.C. § 113(a)(5) (Simple assault within aircraft jurisdiction) and 21 U.S.C. § 841(a)(1) & (b)(2) (Possession with intent to distribute Schedule IV controlled substance);
>
> (2) the Court imposes a requirement that Mr. Heller must register as a sex offender; but if this exception to the appellate waiver applies, Mr. Heller may only appeal the Court's sex offender registration ruling;
>
> (3) the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 9; or
>
> (4) the government appeals the sentence imposed.

If criteria (1), (3), or (4) apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack including, but not limited to, a motion brought under 28 U.S.C. § 2255. This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

> (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;
>
> (2) the defendant was deprived of the effective assistance of counsel; or
>
> (3) the defendant was prejudiced by prosecutorial misconduct.

## II. ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of 18 U.S.C. § 113(a)(5) (Simple assault within aircraft jurisdiction) and 21 U.S.C. § 841(a)(1) & (b)(2) (Possession with intent to distribute Schedule IV controlled substance) are as follows:

### Count One: 18 U.S.C. § 113(a)(5)

(1)  The defendant assaulted the victim; and

(2)  The assault occurred within the special maritime and territorial jurisdiction of the United States.

### Count Two: 21 U.S.C. § 841(a)(1) & (b)(2)

(1)  the defendant knowingly and intentionally possessed Ambien (zolpidem), a schedule IV controlled substance;

(2)  the substance was Ambien (zolpidem); and

(3)  the defendant possessed the substance with the intent to distribute it.

### III.  STATUTORY PENALTIES

The maximum penalties for a violation of Count One of the Information are not more than 6 months' imprisonment; a fine of not more than $5,000, not more than 1 year of supervised release, and a $10 mandatory special assessment fee.

The maximum penalties for a violation of Count Two of the Information are not more than 5 years' imprisonment; a fine of not more than $250,000; not less than one year of supervised release and not more than lifetime supervised release; and a mandatory $100 special assessment fee.

### IV.  COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

Mr. Heller believes and has been advised by counsel that he should not be required to register as a sex offender under federal law. The government will not ask the Court to impose sex offender registration as a condition of probation or any other component of Mr. Heller's sentence.

Nonetheless, Mr. Heller has been advised and understands that if authorities later determine that the Sex Offender Registration and Notification Act ("SORNA"), a federal law, does apply to him, any failure by him to comply with these obligations will subject him to prosecution for violations of applicable state law or 18 U.S.C. § 2250, a federal law, which is punishable by a fine, imprisonment, or both.

## V.   STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree the government would be able to prove the following facts at trial.

Between approximately 2011 and January 16, 2019, Dakota Michael Heller was a member of Cornerstone Church ("Cornerstone") in Boulder, Colorado. Through Cornerstone, Mr. Heller became acquainted with "Christopher," who began attending Cornerstone when he was 12 years old as a participant in the middle school and later high school youth ministry program.

Between March 25, 2017 and April 3, 2017, approximately 12 Cornerstone members, including Mr. Heller and Christopher, traveled to Uganda for a volunteer mission trip, where

they built school desks, paid for wells to be dug, and did other mission work.

On or about March 22, 2017, Mr. Heller filled a prescription for fifteen (15) Ambien (zolpidem) pills, each of a 10mg dose, in Colorado. At the time Mr. Heller possessed the Ambien in the District of Colorado, he intended to distribute it to other Cornerstone members on the upcoming international flights. He knew those people did not have a prescription for Ambien. Ambien (zolpidem) is a Schedule IV controlled substance.

On or about April 2, 2017, Mr. Heller, Christopher, and other mission trip participants departed Uganda, flew to Dubai, and thereafter departed Dubai en route to Seattle, Washington, with continuing travel from Seattle to Denver, Colorado. In Dubai, Mr. Heller, Christopher, and other Cornerstone congregants boarded Emirates Air flight # EK229. For this travel leg, Mr. Heller traded seats with another passenger and was then seated next to Christopher, who was in a middle seat with Mr. Heller immediately to his right.

Christopher took Ambien shortly after the flight departed Dubai. After Christopher felt groggy and sleepy from the Ambien, Mr. Heller touched Christopher's penis with his hand beneath a common blanket spread over their laps, and then masturbated Christopher. Christopher did not consent to the sexual contact initiated by Mr. Heller on the airplane.

At the time of the assault on the airplane, Christopher was 16 years old and Mr. Heller was 35 years old. In the special maritime and territorial jurisdiction of the United States, the age of consent to the sexual contact that occurred on the airplane is 16 years old. Mr. Heller was arrested in Colorado on May 9, 2019 on charges in this case.

### VI.   ADDITIONAL EVIDENCE RELATING TO SENTENCING

The parties agree that the government would present the following evidence at a sentencing hearing. The parties reach this agreement so that Christopher will not need to

testify during Mr. Heller's sentencing hearing. This agreement does not limit either party from seeking to present additional evidence at sentencing. Mr. Heller stipulates to the admissibility of the following evidence during sentencing, but may dispute the factual and legal conclusions asserted by the government based on this evidence.

Christopher would testify to the following information:

For approximately six months when Christopher was between the ages of 12 and 13 years old, Mr. Heller volunteered as Christopher's small group leader in Cornerstone's Tuesday night youth group sessions. When Christopher was 13 years old, Cornerstone leaders asked Mr. Heller to step down as a volunteer in the youth ministry program and Mr. Heller did so. Although Mr. Heller no longer led Christopher's youth group sessions, the two saw each other regularly at Cornerstone and Cornerstone events over the subsequent three years. On April 3, 2017, Christopher considered Mr. Heller a mentor and trusted adult member of Cornerstone.

Christopher does not have a specific recollection of who gave him the Ambien he took on April 3, 2017, but he believes it may have been Mr. Heller. At the time of the sexual contact on the airplane, Christopher was mostly asleep. Christopher fell asleep after ejaculating. Some time later, he awoke and went to use the restroom on the plane. While in the restroom, he discovered his shorts were unfastened and his clothing was damp from the ejaculate. Christopher then realized what Mr. Heller had done to him.

When Emirates flight # EK229 flight landed in Seattle, Christopher confronted Mr. Heller in the Seattle airport, and angrily asked Mr. Heller what he had done to him. Mr. Heller told Christopher that he (Heller) had made a mistake, he was sorry, and asked Christopher not to tell anyone as it would "ruin [Heller's] life." After Mr. Heller and Christopher returned to Colorado, Mr. Heller continued trying to communicate with

Christopher, and on or about April 10, 2017, Christopher agreed to meet Mr. Heller at a local Chipotle. During this April 10, 2017 meeting at Chipotle, Mr. Heller again told Christopher that he (Heller) had made a mistake. Mr. Heller added that he thought Christopher might be gay as he did not have a girlfriend at the time of the incident. Mr. Heller implored Christopher again not to tell anyone of the sexual contact, and promised to "get help."

Based on Mr. Heller's statement that Christopher's disclosure would ruin his life, and his promises to get help, Christopher did not disclose the sexual contact until he did so in Australia in late 2018. Shortly after that disclosure, Christopher disclosed the sexual contact to his uncle, who immediately contacted law enforcement.

## VII.   ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

### Count One

a) Under USSG § 2A2.3(a)(1), the base offense level is 7.

b) There are no applicable specific offense characteristics.

c) The government asserts that under USSG § 3B1.3, the defendant abused a position of trust in committing his offense, warranting a 2-level increase. Mr. Heller objects to the application of §3B1.3.

d) The government asserts that under USSG § 3C1.1, the defendant obstructed or impeded the administration of justice by attempting to dissuade the victim from disclosing the assault, warranting a 2-level increase. Mr. Heller objects to the application of §3C1.1.

e) Mr. Heller should receive a 2-level decrease for acceptance of responsibility under § 3E1.1(a).

f) If the Court overrules Mr. Heller's two objections noted above, the adjusted offense level is **9**. If the Court sustains Mr. Heller's two objections noted above, the adjusted offense level is **5**.

### Count Two

a) Under USSG § 2D1.1(a)(5), the base offense level is computed based on total drug amount. The defendant is responsible for possession with intent to distribute at least one 10mg Ambien pill.

b) Pursuant to U.S.S.G § 2D1.1(c)(17), the defendant's base offense level is 6.

c) There are no applicable specific offense characteristics.

d) Mr. Heller should receive a 2-level decrease for acceptance of responsibility under § 3E1.1(a).

e) There are no adjustments related to the victim, role in the offense, or other factors. The adjusted offense level is **4**.

### Grouping

a) Counts One and Two do not group under USSG Chapter 3D. However, under USSG § 2D1.1, the defendant's total adjusted offense level is not affected by Count 2.

b) If the final offense level for Count One is 9, then his conviction for Count Two counts for one half-unit and does not increase the final offense level. §3D1.4(b). If the Court sustains Mr. Heller's objections to the two Ch. 3

Page 9 of 11

offense level increases for Count One, then his conviction for Count Two counts for one unit and does not increase the final offense level. §3D1.4(a). Therefore, the final combined offense level is either 9, 7, or 5.

c) The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions. The parties believe the defendant is in criminal history category I.

d) The career offender/criminal livelihood/armed career criminal adjustments do not apply.

e) The advisory guideline range resulting from these calculations is either 0 to 6 months or 4 to 10 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from 0 months (bottom of Category I, offense level 5) to 27 months (top of Category VI, offense level 9). The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

f) Pursuant to guideline § 5E1.2, assuming the estimated offense level(s) above are correct, the fine range for this offense would be either $500 to $9,500 (offense level 5); $1,000 to $9,500 (offense level 7); or $2,000 to $20,000 (offense level 9), plus applicable interest and penalties.

## VIII.  ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 7-30-2021

Dakota Michael Heller
Defendant

Date: 7-30-21

Kelly Christl
Attorney for Defendant

Date: 7/30/21

David Kraut
Attorney for Defendant

Page 10 of 11

Date: 7/30/2021

*(signature)*
Patricia Davies
Assistant U.S. Attorney

Date: 7/30/21

*(signature)*
Andrea Surratt
Assistant U.S. Attorney